[901 NE2d 187, 872 NYS2d 696]

JAMES J. MORAN et al., Respondents, v MEHMET ERK et al., Appellants.

Argued October 22, 2008; decided November 25, 2008

## POINTS OF COUNSEL

*Harter Secrest & Emery LLP,* Buffalo (*John G. Horn* of counsel), for appellants. I. The lower courts erred in concluding that respondents acted in bad faith when they decided not to purchase appellants' house. (*Pepitone v Sofia,* 203 AD2d 981; *Niederhofer v Lindner,* 6 AD3d 1218; *Nelson v Ring,* 136 AD2d 878; *Ulrich v Daly,* 225 AD2d 229; *Schreck v Spinard,* 13 AD3d 1027; *Rowe v Estate of Samuels,* 42 AD3d 744; *McKenna v Case,* 123 AD2d 517; *Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79; *Wieder v Skala,* 80 NY2d 628; *Van Iderstine Co. v Barnet Leather Co.,* 242 NY 425.) II. The lower courts erred in concluding that respondents prevented their attorney from "considering" the contract. (*Murphy v American Home Prods. Corp.,* 58 NY2d 293; *Neuman v Pike,* 591 F2d 191; *In re Gulf Oil/Cities Serv. Tender Offer Litig.,* 725 F Supp 712; *Shear v National Rifle Assn.,* 606 F2d 1251; *District-Realty Tit. Ins. Corp. v Ensmann,* 767 F2d 1018; *Schreck v Spinard,* 13 AD3d 1027.) III. Judicial inquiry into what an attorney should consider in deciding whether to disapprove a real estate contract is unwarranted, improper and dangerous. (*Pelusio v Chen,* 3 Misc 3d 1106[A], 2003 NY Slip Op 51727[U]; *Niederhofer v Lindner,* 6 AD3d 1218; *Ulrich v Daly,* 225 AD2d 229.)

*Scott D. Cannon,* Geneseo, for respondents. I. Respondents acted in bad faith by instructing their attorney to disapprove the contract. (*511 W. 232nd Owners Corp. v Jennifer Realty Co.,* 98 NY2d 144; *Dalton v Educational Testing Serv.,* 87 NY2d 384; *Murphy v American Home Prods. Corp.,* 58 NY2d 293; *Rowe v Great Atl. & Pac. Tea Co.,* 46 NY2d 62; *McKenna v Case,* 123 AD2d 517; *Ulrich v Daly,* 225 AD2d 229; *Pelusio v Chen,* 3 Misc 3d 1106[A], 2003 NY Slip Op 51727[U]; *Van Iderstine Co. v Barnet Leather Co.,* 242 NY 425; *Niederhofer v Lindner,* 6 AD3d 1218; *Nelson v Ring,* 136 AD2d 878.) II. Adopting respondents' argument will create a right of cancellation/rescission. III. The arguments submitted in the amicus brief are misplaced. (*Christy v Premo,* 194 AD2d 910; *Pelusio v Chen,* 3 Misc 3d 1106[A], 2003 NY Slip Op 51727[U]; *Ulrich v Daly,* 225 AD2d 229; *Schreck v Spinard,* 13 AD3d 1027; *Maxton Bldrs. v Lo Galbo,* 68 NY2d 373; *Big Apple Car v City of New York,* 204 AD2d 109.)

*Couch White, LLP, General Counsel, New York State Associa-*

*tion of Realtors, Inc.,* Albany (*Michael T. Wallender* of counsel), for New York State Association of Realtors, Inc., amicus curiae. I. In New York, typically in "upstate" areas, contracts for the purchase and sale of residential real estate are prepared by real estate licensees and contain "attorney approval" clauses in accordance with the standards of *Matter of Duncan & Hill Realty v Department of State of State of N.Y.* (62 AD2d 690 [1978]). II. In the contemporary New York real estate marketplace, "attorney approval" clauses are generally understood to enable a party's attorney to disapprove a proposed contract for any reason, without limitation. (*Brooke Group v JCH Syndicate 488,* 87 NY2d 530; *Slamow v Del Col,* 174 AD2d 725, 79 NY2d 1016; *Brown Bros. Elec. Contrs. v Beam Constr. Corp.,* 41 NY2d 397; *Rowe v Great Atl. & Pac. Tea Co.,* 46 NY2d 62; *Murphy v American Home Prods. Corp.,* 58 NY2d 293; *Triton Partners v Prudential Sec.,* 301 AD2d 411; *Delta Props. v Fobare Enters.,* 251 AD2d 960; *Namad v Salomon Inc.,* 74 NY2d 751; *Graff v Billet,* 64 NY2d 899; *Nelson v Ring,* 136 AD2d 878.)

## OPINION OF THE COURT

READ, J.

On December 13, 1995, defendants Mehmet and Susan Erk signed a real estate contract to purchase the home of plaintiffs James J. and Kathleen D. Moran, a 5,000-square-foot ranch-style house located in Clarence, New York. The contract, which was executed by the Morans on December 22, 1995, provided for a purchase price of $505,000, and contained a rider with an "ATTORNEY APPROVAL CONTINGENCY" stating as follows:

> "This Contract is contingent upon approval by attorneys for Seller and Purchaser by the third business day following each party's attorney's receipt of a copy of the fully executed Contract (the 'Approval Period'). . . . If either party's attorney disapproves this Contract before the end of the Approval Period, it is void and the entire deposit shall be returned."

Both the contract and the rider were form documents copyrighted and approved by the Greater Buffalo Association of Realtors, Inc. and the Bar Association of Erie County.*

After signing the contract, the Erks developed qualms about purchasing the Morans' house. They discussed their misgivings

---

* The form contract, which is available electronically on the Bar Association's Web site (*see* http://www.eriebar.org/pdfs/Contract.pdf [last accessed Nov. 17, 2008]), contains the subject attorney approval contingency as

with each other and with friends and family, and ultimately decided to buy a different residence. As a result, they instructed their attorney to disapprove the contract, and she did so on December 28, 1995, which was within the three-day period for invoking the attorney approval contingency.

The Morans—who had moved out of their Clarence residence in September 1995—kept the house on the market until it was eventually sold for $385,000 in late 1998. Shortly thereafter, they sued the Erks in Supreme Court, alleging breach of contract. They sought to recover as damages the difference between the contract price of $505,000 and the eventual sale price of $385,000, as well as "carrying costs" for marketing the Clarence property for almost three years beyond the date of the 1995 contract with the Erks.

After a bench trial, Supreme Court found in the Morans' favor, and entered a judgment against the Erks for $234,065.75, which represented the difference between the contract price and the eventual sale price, plus statutory interest. Citing *McKenna v Case* (123 AD2d 517 [4th Dept 1986]) and *Ulrich v Daly* (225 AD2d 229 [3d Dept 1996]), Supreme Court opined that "[i]t is well settled law that where a Buyer acts in bad faith by instructing his attorney to disapprove a real estate contract, the condition that the contract be approved by an attorney is deemed waived and a contract is formed" (21 Misc 3d 1137[A], 2006 NY Slip Op 52668[U], *5). Likewise relying on *McKenna*, the Appellate Division affirmed in a short memorandum opinion (45 AD3d 1329 [2007]). We subsequently granted the Erks' motion for leave to appeal (10 NY3d 704 [2008]), and now reverse.

Attorney approval contingencies are routinely included in real estate contracts in upstate New York (*see e.g.* Dorothy H. Ferguson, *Subject to the Approval of My Attorney Clauses*, 35 NY Real Prop LJ 35 [spring/summer 2007]; Alice M. Noble-Allgire, *Attorney Approval Clauses in Residential Real Estate Contracts—Is Half a Loaf Better than None?*, 48 U Kan L Rev 339, 342 [2000]). Requiring a real estate contract to be "subject to" or "contingent upon" the approval of attorneys for both contracting par-

---

paragraph "ATC1" (*see id.* at 9). A boldface header to paragraph ATC1 provides:

> "**ATTORNEY APPROVAL CONTINGENCY.** *CAUTION: The deletion or modification of Paragraph ATC1 (A) or Paragraph ATC1 (B), unless such modification extends the Attorney Approval Period or Addendum Approval Period, shall result in the automatic withdrawal of any bar association approval of this form*" (*id.* at 9).

ties ensures that real estate brokers avoid the unauthorized practice of law (*see Matter of Duncan & Hill Realty v Department of State of State of N.Y.*, 62 AD2d 690, 701 [4th Dept 1978], *lv denied* 45 NY2d 709, 821 [1978]; 1996 Ops Atty Gen No. 96-F11), and allows both contracting parties to have agents representing their respective legal interests (*see generally* Real Property Law § 443 *et seq.*; *Rivkin v Century 21 Teran Realty LLC*, 10 NY3d 344, 352-356 [2008] [discussing brokers' agency relationships and duties in real estate transactions, and emphasizing that, absent express disclosure to the contrary, a real estate broker does not represent the interests of both parties to a transaction]). Where a real estate contract states that it is "subject to" or "contingent upon" the approval of each party's attorney, this language means what is says: no vested rights are created by the contract prior to the expiration of the contingency period (*see* Black's Law Dictionary 828 [8th ed 2004], contingent interest ["An interest that the holder may enjoy *only upon the occurrence of a condition precedent*" (emphasis added)]).

Here, as previously noted, the contract between the Erks and the Morans explicitly stated that "[t]his Contract is *contingent upon approval by attorneys for Seller and Purchaser* by the third business day following each party's attorney's receipt of a copy of the fully executed Contract," and further provided that "[i]f either party's attorney disapproves this Contract before the end of the Approval Period, *it is void*" (emphases added). The Morans argue that the contract nonetheless created an implied limitation upon an attorney's discretion to approve or disapprove the contract. We do not ordinarily read implied limitations into unambiguously worded contractual provisions designed to protect contracting parties. The Morans, however, contend—and the lower courts apparently agreed—that the implied covenant of good faith and fair dealing implicitly limits an attorney's ability to approve or disapprove a real estate contract pursuant to an attorney approval contingency. This argument misconstrues the implied covenant of good faith and fair dealing under New York law.

The implied covenant of good faith and fair dealing between parties to a contract embraces a pledge that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002], quoting *Dalton v Educational Testing*

*Serv.*, 87 NY2d 384, 389 [1995] [additional citation omitted]). Yet the plain language of the contract in this case makes clear that any "fruits" of the contract were *contingent* on attorney approval, as any reasonable person in the Morans' position should have understood (*see 511 W. 232nd Owners Corp.*, 98 NY2d at 153 [implied covenant of good faith and fair dealing encompasses "promises which a reasonable person in the position of the promisee would be justified in understanding were included" (citations omitted)]).

Further, considerations of clarity, predictability, and professional responsibility weigh against reading an implied limitation into the attorney approval contingency. Clarity and predictability are particularly important in the interpretation of contracts (*see Maxton Bldrs. v Lo Galbo*, 68 NY2d 373, 381 [1986] ["when contractual rights are at issue, where it can reasonably be assumed that settled rules are necessary and necessarily relied upon, stability and adherence to precedent are generally more important than a better or even a 'correct' rule of law" (some internal quotation marks and citation omitted)]), and "[t]his is perhaps true in real property more than any other area of the law" (*Holy Props. v Cole Prods.*, 87 NY2d 130, 134 [1995] [citation omitted]). But the bad faith rule advocated by the Morans, which derives from the *McKenna* decision, advances none of those objectives.

In *McKenna*, a short memorandum opinion, the Appellate Division held that an attorney's disapproval pursuant to an attorney approval contingency "would terminate plaintiff's rights under the contract, *unless said disapproval is occasioned by bad faith*" (123 AD2d 517, 517 [1986] [citations omitted and emphasis added]). The court further stated,

> "While the issue of 'bad faith' usually raises a question of fact precluding summary judgment, the uncontradicted proof demonstrates conclusively that defendant acted in bad faith by instructing his attorney to disapprove the contract. Defendant, by interfering and preventing his attorney from considering the contract, acted in bad faith and, therefore, the condition that the contract be approved by seller's attorney must be deemed waived and the contract formed" (*id.* [citation omitted]).

Reading a bad faith exception into an attorney approval contingency would create—as the *McKenna* court itself recog-

nized—a regime where "question[s] of fact precluding summary judgment" would "usually [be] raise[d]" by a disappointed would-be seller or buyer *any time* an attorney disapproved a real estate contract pursuant to an attorney approval contingency. In an area of law where clarity and predictability are particularly important, "this novel notion would be entirely dependent on the subjective equitable variations of different Judges and courts instead of the objective, reliable, predictable and relatively definitive rules" of plain-text contractual language (*Ely-Cruikshank Co. v Bank of Montreal*, 81 NY2d 399, 403 [1993]).

The circumstances of this case illustrate the chanciness inherent in a bad faith rule. The Erks' attorney disapproved the contract for the sale of the Morans' Clarence house in late 1995. The Erks soon bought a house in a different community, and continued on with their lives, relying on their attorney's disapproval of a contract that declared that such disapproval rendered it "void." Some three years after their last contact with the Morans, the Erks were served with the complaint in this breach-of-contract lawsuit. Now—10 years after their attorney disapproved the contract within a three-day disapproval period—the Erks are fighting a six-figure judgment for putatively breaching an unwritten covenant because of something Mrs. Erk may have said or neglected to say in a single conversation with her attorney.

Indeed, any inquiry into whether a particular attorney disapproval was motivated by bad faith will likely require factual examination of communications between the disapproving attorney and that attorney's client (*see e.g. McKenna*, 123 AD2d at 517 ["defendant acted in bad faith by *instructing his attorney to disapprove the contract*" (emphasis added)]; *Moran v Erk*, 45 AD3d 1329 [2007] ["the evidence supports the court's determination that defendants acted in bad faith by *instructing their attorney to disapprove the contract*" (emphasis added)]). That is, the disapproving attorney will be subpoenaed to testify about communications the disclosure of which might be detrimental to that attorney's client—a direct conflict with an attorney's duty to preserve a client's confidences and secrets (*see* 22 NYCRR 1200.19 [a] [defining *"secret"* as "information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client"]). This is precisely what occurred here, where the lower courts' findings

of bad faith were expressly grounded in the deposition testimony of the Erks' attorney. Moreover, the threat to attorney-client confidentiality under a bad faith regime could harm the attorney-client relationship itself in the context of real estate transactions. A diligent attorney, cognizant of the risk of being subpoenaed to testify as to the basis for a disapproval, would face a perverse incentive to avoid candid communications with his or her client regarding a transaction in which the attorney is supposed to represent the client's legal interest.

All these potential problems vanish when an attorney approval contingency is interpreted according to its plain meaning, as our sister state of New Jersey has long done (*see New Jersey State Bar Assn. v New Jersey Assn. of Realtor Bds.*, 186 NJ Super 391, 395, 452 A2d 1323, 1325 [1982] [approving "broad construction" of attorney approval clause "enabling an attorney to disapprove a contract or lease for any reason or reasons which would not be subject to review"], *mod on other grounds and affd* 93 NJ 470, 461 A2d 1112 [1983]). We therefore hold that where a real estate contract contains an attorney approval contingency providing that the contract is "subject to" or "contingent upon" attorney approval within a specified time period and no further limitations on approval appear in the contract's language, an attorney for either party may timely disapprove the contract for any reason or for no stated reason. Since no explicit limitations were placed on the attorney approval contingency in the contract in this case, the Erks' attorney's timely disapproval was valid, and the contract is void by its express terms.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order reversed, etc.