PAXI, LLC, Plaintiff,

v.

SHISEIDO AMERICAS CORPORA-
TION, Shiseido Cosmetics (America)
Ltd. and Sephora USA, Inc., Defen-
dants.

No. 09 Civ. 4739 (CM).

United States District Court,
S.D. New York.

July 8, 2009.

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

McMAHON, District Judge:

On June 22, 2009, plaintiff Paxi LLC applied for a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, against defendants Shiseido Americas Corporation and Shiseido Cosmetics (America) Ltd. (collectively, Shiseido).[1] In the instant action, Paxi has asserted claims for breach of contract, "detrimental reliance" and tortious interference with contractual relations against the defendants. Only Shiseido has appeared.

Paxi asks that Shiseido be enjoined from violating the May 16, 2007 "Shiseido Retailer Agreement" (the "Retailer Agreement") and the September 23, 2008 "Retailer Agreement Addendum" (the "Addendum") between Paxi (f/k/a Uptown Gifts) and Shiseido. Paxi contends that the Retailer Agreement requires Shiseido to supply plaintiff with Shiseido cosmetic products. Paxi alleges that Shiseido has stopped supplying it with these products, in violation of the Retailer Agreement. If Shiseido does not honor its obligations under the Retailer Agreement, Paxi contends that it "likely [will] go out of business," because "the sale of Shiseido products is the very foundation of Paxi's business." (Declaration of John P. Gleason Ex. A (hereinafter, "Su Decl.") ¶ 2.) Without a steady supply of Shiseido products, Paxi asserts, it will not produce enough revenue to pay its rent, and its landlord will confiscate plaintiff's security deposit and evict Paxi.

For the reasons that follow, Paxi's application for a preliminary injunction is denied.

John Paul Gleason, Gleason & Koatz, LLP, New York, NY, for Plaintiff.

Alan David Kaplan, Herrick, Feinstein LLP, New York, NY, for Defendants.

---

1. Although Paxi brings an interference with a contract claim against defendant Sephora USA, Inc., its injunction request does not seek any type of order against Sephora. Thus, it is clear plaintiff's application for a preliminary injunction is directed only against Shiseido.

## Background

Paxi is a Maryland limited liability company with a principal place of business in Washington, DC. (Compl. ¶ 1.) All of Paxi's members are residents and citizens of Maryland. (*Id.*) Paxi is a cosmetics retailer. Presently, its only retail store is located in Chevy Chase, Maryland. (Su Decl. ¶ 9.) Almost all of Paxi's retail sales are for Shiseido products. (*Id.* ¶ 8.)

Shiseido is a New York corporation. (Compl. ¶ 2.) It is a wholesaler of cosmetic products. (*Id.* ¶ 8.)

In May 2007, Paxi began selling Shiseido cosmetic products at its old retail location in Washington, DC. (Su Decl. ¶ 8.) At that time, Paxi had acquired the retail business of LIZ Corporation, which had been selling Shiseido products. (*Id.*) Paxi acquired LIZ Corporation on the understanding that it would act as the successor to the Retailer Agreement Shiseido and LIZ Corporation previously had entered into. (*Id.*)

*The Terms of the Retailer Agreement*

There are twenty-four provisions in the Retailer Agreement, but only a few are relevant to Paxi's application for a preliminary injunction.

Pursuant to the terms of the Retailer Agreement, Shiseido agreed to sell its cosmetic products to Paxi. Paragraph 1 of the agreement provides: "Shiseido agrees to sell Shiseido products to Retailer [Paxi] on a non-exclusive basis under the terms set forth herein, said terms may be modified, in Shiseido's sole discretion, upon five (5) days prior notice." (Declaration of Alan D. Kaplan (hereinafter "Kaplan Decl.") Ex. A ¶ 1 ("Paragraph 1").)

The agreement specifies the financial terms on which Shiseido will sell products to Paxi. Paxi must pay Shiseido "60% of the suggested retail prices. Payment of freight is the obligation of Retailer. Shiseido reserves the right, in its sole discretion, to modify these terms as dictated by its business requirements." (*Id.* ¶ 3 ("Paragraph 3").)

In return for being able to buy Shiseido products, the Retailer Agreement imposes a number of obligations on Paxi.

For example, Paxi only can sell Shiseido products at the location listed in the Retailer Agreement (i.e., the former Washington, DC location). "Shiseido products will be sold only through the retail outlet(s) listed in this agreement at the address set forth above. No direct mail, internet, or other outside sales solicitation is permitted without the advance written consent of Shiseido. Shiseido retains the right to open a company store or to enter into a retailer agreement with any person or entity at any time and at any location." (*Id.* ¶ 7 ("Paragraph 7").)

Before using promotional or marketing materials for Shiseido products, Paxi must obtain Shiseido's approval. "Shiseido related promotions, advertising, and/or marketing programs initiated by Retailer must be approved by the Shiseido Account Executive prior to execution.... Retailer agrees that any Shiseido initiated promotions will not be coupled with any other product or Retailer promotion." (*Id.* ¶ 13 ("Paragraph 13").)

The Retailer Agreement also contains provisions governing its renewal and termination. In relevant part, the agreement provides:

(a) The term of this Agreement shall be for term beginning on the Effective Date and ending on 12/31/2007. At the end of the Initial term this Agreement shall automatically renew for successive one (1) year periods ("Renewal Term") unless either party notifies the other party no less than thirty (30) days prior to the expiration of the Initial Term or any Renewal Term of its intention not to renew this Agreement.

\* \* \*

(d) Notwithstanding the above, either party may terminate this Agreement without cause upon five (5) days prior written notice to the other party hereto.

(*Id.* ¶ 18 ("Paragraph 18").)

The Retailer Agreement specifies that it is governed by New York law. (*Id.* ¶ 24.) In addition, the agreement states that its terms and conditions "may be modified only by written agreement signed by the parties hereto." (*Id.* ¶ 23.)

*Paxi asks to move its store to Chevy Chase, Maryland*

In 2008, Paxi decided it wanted to move its retail store to a larger location. (Su Decl. ¶ 9.) Paxi settled on a retail space located in Chevy Chase, Maryland. (*Id.*) Before signing a lease for the Chevy Chase location, Paxi alleges that it asked Shiseido for permission to change its store's location, which Paxi claims Shiseido gave. (*Id.*) Paxi claims that Shiseido memorialized its consent to the move in the parties' September 23, 2008 Retailer Agreement Addendum. (*Id.*) Shiseido never signed the Addendum, but the Addendum is typed on Shiseido stationery, suggesting that it was prepared at Shiseido. (Kaplan Decl. Ex. B.) Paxi alleges that, as evidenced by the Addendum, Shiseido knew that Paxi was undertaking lease obligation in reliance on Shiseido's promise to continue to sell Shiseido products to Paxi. (Compl. ¶¶ 16–18.) Shiseido does not presently dispute that it was aware of and consented to the move.

*The Terms of the Addendum*

The Addendum is dated September 23, 2008. Before describing the parties' addendum to the Retailer Agreement, the Addendum contains a series of WHEREAS clauses. In relevant part, they provide:

WHEREAS, Retailer is opening a new retail store at the Retail Location [defined as the Chevy Chase location] and will market and sell the Products at the Retail Location; and

WHEREAS, the Retailer shall undertake certain obligations with respect to this Retail Location in addition to those set forth in the Retailer Agreement.

(Kaplan Decl. Ex. B.)

The rest of the Addendum provides:

*Obligations of Retailer*

Retailer shall be expressly prohibited from placing or affixing any marketing, advertising or promotional signage for the Products on, near or adjacent to the exterior of the building(s) on, and/or grounds surrounding, the Retail Location ("Exterior Signage"). For the purposes of this Addendum, Exterior Signage shall include awnings, signs and sandwich boards. With Shiseido's prior approval, Retailer may place or affix certain marketing, advertising or promotional material such as approved posters, fliers and banners inside windows or in other suitable, as Shiseido may determine, interior locations within the Retail Location. Retailer's breach of any of the provisions of this Addendum shall be deemed a material breach and grounds for immediate termination of this Addendum and/or the Retailer Agreement.

*The foregoing obligations are in addition to, and not in lieu of, the terms and conditions set forth in the Retailer Agreement.* In the event there is any conflict between the terms in this Addendum and those in the Retailer Agreement, the terms in this Addendum govern. *All the remaining covenants, terms and conditions of the Retailer*

*Agreement remain in full force and effect.*

(*Id.* (emphasis added).)

### Paxi moves its retail store to Chevy Chase, Maryland

After Paxi signed the Addendum, it signed a ten-year lease for the Chevy Chase location. (Su Decl. ¶ 3.) "Rent begins at $102,925 for the first year and goes up to $128,526.73 in the last year." (*Id.* ¶ 5.) In addition, Paxi provided its landlord with a $155,000 letter of credit to secure the lease. (*Id.* ¶ 7.) Despite changing zip codes, the new location is only a few blocks away from the old Washington, DC site.[2]

In February 2009, Shelly Zhang, a Paxi representative, met with Michelle Poon of Shiseido in New York. (*Id.* ¶ 10.) At that meeting, Zhang told Poon that Paxi's new store would open in March 2009. (*Id.*) Paxi claims that "Poon approved" of this plan, and told Zhang to inform her of the store's opening date so that Shiseido could "send account executives to check the Shiseido showcases." (*Id.*)

On February 3, 2009, Shannon Su, a "member of Paxi, LLC," sent an email to a Shiseido employee, Ms. Yamoda, that confirmed the new store would open in March 2009. (*Id.* ¶ 11.) No one from Shiseido responded to this email. (*Id.*)

In April 2009, Su called Shiseido's New York office and spoke with a receptionist at the company. (*Id.* ¶ 11.) The receptionist told Su that Yamoda no longer worked at Shiseido. (*Id.*) Later that day, Eunice Wang, an account executive at Shiseido, called Su. (*Id.*) During that conversation, Wang told Su that Shiseido was closing Paxi's account, because the company did not realize that Paxi was moving its store into Maryland. Wang said that Shiseido thought Paxi was moving out of Ma-

ryland and into Washington, DC. (*Id.*) This, of course, is contradicted by both the Retailer Agreement (which lists the original approved location as being in Washington, DC) and the Addendum (which shows the new location is Maryland).

After the conversation with Wang, Su and Zhang called Poon. Poon told them that the move had been approved and that all Paxi "had to do was complete and return to Ms. Poon another Shiseido credit-check form." (*Id.*)

On April 8, 2009, Paul Haar, Paxi's attorney, sent an independent store credit check to Shiseido. (Kaplan Decl. Ex. D at 3–4.) On April 22, 2009, Poon sent Haar an email telling him: "Thank you for calling. We are waiting the result of the credit check and upper management will then decide on opening of store. We will contact you once [a] decision is made." (*Id.* at 2.)

Haar responded the following day: "Thank you for your kind reply. I would be very grateful if you could secure a decision in the next few days since the beautiful signage featuring Shiseido is due to be crafted and installed in the coming week." (*Id.*)

On April 23, 2009, Poon sent an email to Haar (Paxi), Su (Paxi), Wang (Shiseido), and Katherine Fairhurst (Shiseido) stating: "Shiseido has decided not to open the location you are applying for at this time." (*Id.* at 1–2.) This, of course, represented a reversal of the position set forth in the Addendum. Almost immediately, Haar replied: "I would be very grateful if you could kindly advise me of Shiseido's reasons not to open the location proposed by Paxi ... and what Shiseido may require to reconsider its decision." (*Id.* at 1.) Later

---

**2.** The Court takes judicial notice that the two locations are less than a mile apart and located on the same street. *See Tucker v. Outwa-* *ter,* 118 F.3d 930, 935 (2d Cir.1997) (noting a court may take judicial notice of a location).

that same day, Fairhurst answered Haar's question. She wrote: "Thank you for your interest in our brand. It has been decided to pass on opening this location." (*Id.*)

Shiseido contends that Poon's and Fairhurst's April 23 emails constituted written notice to Paxi that Shiseido was terminating the Retailer Agreement, pursuant to Paragraph 18(d), although, these emails said nothing about ending a relationship with Paxi. Shiseido has not supplied Paxi with products since the emails were sent over two months ago.

Paxi alleges that Fairhurst, Shiseido's East Coast Sales Director, decided to end Paxi's agreement with Shiseido "by pretending that Shiseido had decided to 'pass on the [new Paxi] location.'" (Su Decl. ¶ 14 (brackets in original).) Paxi contends that, in reality, Fairhurst made this decision so Shiseido could enter into an agreement with defendant Sephora, a major cosmetics retailer. (*Id.* ¶ 15.)

By terminating the Retailer Agreement, Paxi alleges that Shiseido breached promises Shiseido made in the Addendum. (Compl. ¶ 18.) Paxi alleges that Shiseido knew that Paxi was moving and that it needed a steady supply of Shiseido products to afford its new lease. (*Id.* ¶¶ 16–18.) Paxi alleges that it relied upon the representations in the "WHEREAS" clauses of the Addendum, which it claims created new obligations on Shiseido, in signing the new lease. (*Id.* ¶ 18.)

Once Shiseido stopped supplying Paxi with Shiseido cosmetic products, Paxi's "income ... [shrank] to almost zero causing Paxi LLC to be unable to pay the rent it owes [its] landlord." (Su Decl. ¶ 16.) Paxi claims that its customers were loyal purchasers of Shiseido products and relied on Paxi to sell them. (*Id.* ¶ 17.) Since Shiseido's alleged breach of the Retailer Agreement was "sudden and abrupt," Paxi asserts it has had no time to seek or obtain products from a different source. (*Id.*

¶ 18.) Without a preliminary injunction that forces Shiseido to continue to sell Shiseido products to Paxi, Paxi asserts that it will not be able to pay its rent, and that its landlord will negotiate the $155,000 letter of credit and evict Paxi from the new Chevy Chase location. (*Id.* ¶¶ 6–7.)

## I. Standard of Review

In this Circuit, a preliminary injunction will be granted if the moving party shows that it will suffer irreparable harm absent injunctive relief and *either:* (1) that it is likely to succeed on the merits of its claim; or (2) that there are sufficiently serious questions going to the merits to make them fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party. *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir.2000); *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 998–99 (2d Cir.1997).

In addition, as plaintiff does here, when the moving party seeks a mandatory injunction—that is, an injunction compelling someone to take an action, as opposed to maintaining the status quo—the standard is much higher. The movant must make a "clear" or "substantial" showing that it is entitled to the relief requested. *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir.1997); *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996).

## II. Paxi's Breach of Contract Claims

Paxi claims that Shiseido has breached the Addendum and Retailer Agreement by refusing to sell Shiseido cosmetic products to Paxi at plaintiff's new retail store.

As noted earlier, the Retailer Agreement is governed by New York law. Under New York law, to establish a breach of contract a plaintiff must plead and prove four elements; (1) the existence

of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,* 375 F.3d 168, 177 (2d Cir.2004).

Shiseido argues that Paxi has not, and cannot, identify a provision in the Retailer Agreement or Addendum that it breached. Accordingly, Shiseido contends that Paxi fails to plead a breach of contract claim properly. Both these contentions are wrong.

### A. Paxi has demonstrated a likelihood of success that Shiseido breached the parties' contract.

*The Addendum is a Binding Contract*

As an initial matter, Paxi has shown that the Addendum is a binding agreement on both parties—even though Shiseido did not sign it.

■ Under New York law, "an unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound." *Geha v. 55 Orchard St., LLC,* 29 A.D.3d 735, 736, 815 N.Y.S.2d 253 (2d Dep't 2006) (*quoting Flores v. Lower E. Side Serv. Ctr., Inc.,* 4 N.Y.3d 363, 369, 795 N.Y.S.2d 491, 828 N.E.2d 593 (2005)). "A contract need not be signed to be enforceable." *Flores,* 4 N.Y.3d at 368, 795 N.Y.S.2d 491, 828 N.E.2d 593. To determine whether a party entered into a contractual agreement, a court looks to "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Id.* (internal quotation and citation omitted). It is the responsibility of the court to interpret written instruments, while other evidence about intent, "from which differing inferences may be drawn," *id.* at 368–69, 795 N.Y.S.2d 491, 828 N.E.2d 593 (internal quotation and citation omitted), is left for the trier of fact. However, when there are no competing infer-

ences to be drawn, that is to say when there are no questions of fact, a court may find that the parties entered into an enforceable contract. *See id.* at 370–71, 795 N.Y.S.2d 491, 828 N.E.2d 593.

■ In this case, there are no questions of fact tending to suggest that the Addendum is not an enforceable written contract. Indeed, Shiseido does not so argue; it only argues that it did not breach this agreement.

Furthermore, all of the evidence presented is consistent with the notion that the parties intended for the Addendum to be a binding contract. The parties had discussions about Paxi's desire to move. Subsequently, Paxi received the written Addendum from Shiseido. The Addendum is typed on Shiseido stationery. These facts indicate that the Addendum was prepared at or by Shiseido. The contents of the Addendum reveal that Shiseido knew Paxi was moving, knew where Paxi was moving, knew that Paxi was signing a new lease, and knew Paxi was expecting Shiseido to continue to supply it with cosmetic products. By putting the Addendum on Shiseido stationery and giving it to Paxi to execute, Shiseido, in effect, signed the document, with its letterhead acting as its signature. *See Pennzoil Co. v. Getty Oil Co.,* Civ. A. No. 7425, 1984 WL 15664, at **13–15 (Del.Ch. Feb. 6, 1984) (applying New York law (*citing Crabtree v. Elizabeth Arden Sales Corp.,* 305 N.Y. 48, 53–54, 110 N.E.2d 551 (1953); *APS Food Sys., Inc. v. Ward Foods, Inc.,* 70 A.D.2d 483, 486–87, 421 N.Y.S.2d 223 (1st Dep't 1979))).

It is equally clear that Paxi relied on the Addendum to begin performance under the now amended Retailer Agreement. Once Paxi received and signed the Addendum, it signed a new lease for the Chevy Chase location. Under Paragraph 7 of the original Retailer Agreement, Paxi only

could buy Shiseido products to sell at the location listed in the Retailer Agreement (i.e., Washington, DC location). Thus, as required by Paragraph 7, Paxi waited to get Shiseido's permission to move before arranging to move.

In addition, consistent with its new obligations under the Addendum, Paxi contacted Shiseido so that it could examine plaintiff's marketing and promotional materials for the new location.

In summary, all of the circumstances are consistent with the notion that the parties intended the Addendum to be a binding agreement.

*Shiseido gave its consent to Paxi to change locations*

■ Once Shiseido consented to the move by agreeing to the Addendum, Paxi was free to change its retail location to Chevy Chase.

Shiseido's consent for the move is evident from the text of the Addendum.

The introductory paragraph of the Addendum, in relevant part, provides: "This Retailer Agreement Addendum ... is made ... between Paxi ... and Shiseido ... and only for the site that is specified and named as Bellissima with an address at 7 Wisconsin Circle, Chevy Chase, Maryland 20817 ("Retail Location")." (Kaplan Decl. Ex. B.) The two relevant "WHERE-AS" clauses state: "Retailer [Paxi] is opening a new retail store at the Retail Location and will market and sell the Products [Shiseido brand products] at the Retail Location" and "the Retailer shall undertake certain obligations with respects to this Retail Location in addition to those set forth in the Retailer Agreement." (*Id.*)

It is thus clear, on the face of the Addendum, that Paxi is opening a new store in Chevy Chase, Maryland and that it intends to market and sell Shiseido cosmetic products at this new location. It is equally clear that Shiseido consents to this arrangement.

In exchange for granting this consent, Shiseido required Paxi to undertake new obligations. Immediately after the "WHEREAS" clauses is the main provision of the Addendum, titled *"Obligations of Retailer."* This provision imposes new marketing and promotional obligations on Paxi for the *new location,* which are "in addition to, and not in lieu of, the terms and conditions set forth in the Retailer Agreement." (*Id.*) This provision makes clear that Shiseido consents to the move on the condition that Paxi consents to new marketing restrictions at its new store, which Paxi did when it signed the Addendum.

Accordingly, on September 23, 2008, the date of the Addendum, Shiseido consented to Paxi's move.

*Shiseido breached the Addendum by revoking its consent and failing to supply cosmetics to plaintiff's new store*

■ By granting permission for Paxi to change the location of its retail store on September 23, 2008, Shiseido agreed to extend the terms of the Retailer Agreement to the new location. This meant that Shiseido promised to make Shiseido products available to the new location, pursuant to Paragraph 1 of the Retailer Agreement.

After receiving Shiseido's permission, Paxi signed a ten-year lease with its present landlord. In the process of making preparations to move, Paxi stayed in contact with Shiseido, providing defendants with updates about the store's grand opening. In addition, consistent with the terms of the Addendum, Paxi took steps to fulfill its new marketing obligations. For example, Paxi contacted Poon to tell her when the store would open so that Shiseido could inspect the new Shiseido product showcases.

Nonetheless, in April 2009, Shiseido acted as though Paxi still needed defendants' permission to move. Paxi did not. Permission had already been granted. Yet Shiseido used the move as the reason to stop supplying plaintiff with cosmetics, and failed to provide any cosmetics.

Accordingly, plaintiff has made a strong showing that in all likelihood Shiseido breached its obligations under the Addendum.

Shiseido argues that Paxi has not, and cannot, identify a provision in the Retailer Agreement that defendants breached. Shiseido's argument is unpersuasive.

The Court need only look to the first paragraph of the contract. Shiseido contends that this paragraph imposes no obligations on it, because there is no requirement that Shiseido sell any of its products to Paxi in the contract. But Paragraph 1 provides: "Shiseido agrees to sell Shiseido products to Retailer on a non-exclusive basis under the terms set forth herein, said terms may be modified, in Shiseido's sole discretion, upon five (5) days prior notice." (Kaplan Decl. Ex. A. ¶ 1.) There is, as Shiseido points out, a number of provisions in the contract that allow it to modify the agreement, but there is no evidence that Shiseido exercised its right to modify the agreement, except insofar as it modified the contract to allow Paxi to sell Shiseido products from a new location. Therefore, Shiseido's refusal to sell products to Paxi since April is in blatant violation of Paragraph 1 of the Retailer Agreement.

Alternatively, defendants argue that Paxi's breach of contract claim should be dismissed because plaintiff's complaint does not explicitly state which provision of the Retailer Agreement has been violated. In support of this argument, defendants refer this Court to a recent decision of my colleague, Judge Cote, in *M + J Savitt, Inc. v. Savitt*, 08 Civ. 8535, 2009 WL 691278, at

*9 (S.D.N.Y. Mar. 17, 2009). That case, however, is inapposite. In *M + J Savitt*, the plaintiff contended that a company's certificate of incorporation and by-laws were contracts between the shareholders of the corporation, and that the individual defendants, who were shareholders, breached their "contracts" under these corporate documents by using, among other things, the company's trademarks and inventory for personal use. In this case, plaintiff alleges that defendants breached their obligation under the Retailer Agreement by "failing and refusing to sell to Paxi ... Shiseido cosmetic products." (Compl. ¶ 20.) Paxi's failure to plead that this violates Paragraph 1 (as opposed to Paragraph 2 or Paragraph 3) is not fatal to its claim, since the contract is incorporated within the complaint by reference and the Court has no difficulty finding the relevant provision.

Paxi also claims a breach of contract claim based on Shiseido's decision to sell "Shiseido cosmetics products it promised to sell to Paxi to Sephora." (Compl. ¶ 21.) Paxi is unlikely to succeed on that claim, since Paragraph 1 of the Retailer Agreement specifies that Shiseido has a right to sell its cosmetic products to anyone it wants; the Retailer Agreement with Paxi is "on a non-exclusive basis." (Kaplan Decl. Ex. A. ¶ 1.)

Shiseido also contends that it did not breach the Retailer Agreement, because defendant terminated the agreement in April 23, 2009, when it declined to consent to the new location. As the above discussion makes crystal clear, defendant is mistaken because it had consented to the move in writing in September 2008.

The Retailer Agreement contains an automatic renewal provision:

(a) The term of this Agreement shall be for term beginning on the Effective

Date and ending on 12/31/2007. At the end of the Initial term this Agreement shall automatically renew for successive one (1) year periods ("Renewal Term") unless either party notifies the other party no less than thirty (30) days prior to the expiration of the Initial Term or any Renewal Term of its intention not to renew this Agreement.
(Kaplan Decl. Ex. C. ¶ 18.) By its terms, the Retailer Agreement was automatically renewed for the year 2009, because neither Shiseido nor Paxi gave notice of its intention not to renew the agreement by December 1, 2008.

Shiseido points out that Paragraph 18(d) provides: "Notwithstanding the above, either party may terminate this Agreement without cause upon five (5) days prior written notice to the other party hereto." (*Id.*) However, Shiseido has not, as of the date of this opinion, availed itself of that option.

Poon's and Fairhurst's emails do not qualify as termination notices. Poon's email states: "Shiseido has decided not to open the location you are applying for at this time." (Kaplan Dec. Ex. D. at 1–2.) This is not notice terminating the Retailer Agreement. The email only addresses whether Paxi has permission to open a new location—and, since permission had already been given, it is a breach of contract, not a termination notice.

Fairhurst's email is to the same effect. She wrote, "Thank you for your interest in our brand. It has been decided to pass on opening this location." (*Id.* at 1.) Again, there is no mention of terminating the Retailer Agreement.

**B. Paxi nonetheless fails to meet the standard for a mandatory injunction.**

██ Although Paxi will likely be able to prove at trial that Shiseido breached the Retailer Agreement and Addendum, plaintiff has not made a "clear" or "substantial" showing that it is entitled to a mandatory injunction forcing Shiseido to sell it product in the future. This is because Shiseido still has the ability to terminate the Retailer Agreement at any time without cause. While Shiseido has not yet managed to terminate the agreement, it cannot be stopped from doing so tomorrow. Once Shiseido properly terminates the Retailer Agreement pursuant to Paragraph 18(d), Shiseido will no longer be obligated to sell Shiseido products to Paxi.

Paxi argues that, because Shiseido modified the agreement to allow it to open in a new location, defendant has an obligation to continue to provide it with cosmetic products for an unspecified period of time (the Court could not get counsel to commit to how long that might be). Plaintiff contends that, because the Addendum references the new lease Paxi assumed as part of the move, Shiseido made an implicit promise to continue to supply Shiseido with product at least for a reasonable period. In other words, Paxi contends that the Addendum created a good faith obligation on Shiseido' part not to exercise its termination rights under Paragraph 18(d) of the Retailer Agreement for some unspecified period of time.

██ Under New York law, "Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.,* 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (2002) (internal quotation and citations omitted). "Where the contract contemplates the exercise of discretion, this pledge includes a

promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton*, 87 N.Y.2d at 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995).

But the implied covenant of good faith and fair dealing only gets a party so far, as the New York Court of Appeals recently made clear in *Moran v. Erk*, 11 N.Y.3d 452, 456–57, 872 N.Y.S.2d 696, 901 N.E.2d 187 (2008). In that case, New York's highest court held that the good faith and fair dealing obligation implicit in all contracts could not be relied on to overcome an explicit clause in the contract that allowed each party's attorney to cancel the contract at any time. *Id.* at 459, 872 N.Y.S.2d 696, 901 N.E.2d 187. Defendants ordered their attorney to cancel the contract before the contingency period expired because they did not like its terms. *Id.* at 455, 872 N.Y.S.2d 696, 901 N.E.2d 187. The plaintiffs alleged that this violated the covenant of good faith and fair dealing. The Court of Appeals disagreed:

> We therefore hold that where a real estate contract contains an attorney approval contingency providing that the contract is 'subject to' or 'contingent upon' attorney approval within a specified time period and no further limitations on approval appear in the contract's language, an attorney for either party may timely disapprove the contract for any reason or for no stated reason.

*Id.* at 459, 872 N.Y.S.2d 696, 901 N.E.2d 187.

 *Moran* clarified the scope of the good faith and fair dealing obligation under New York law. The New York Court of Appeals expressed concern about imposing an additional "bad faith" rule on contracts where the parties had expressly bargained for clauses allowing them to exercise their discretion. The court found that this problem could be avoided by interpreting a contract according to the plain meaning of all its provisions. *Id.* Following this logic, the obligation of good faith and fair dealing does not negate a expressly bargained-for clause that allows a party to exercise its discretion, unless that clause imposes a limit on the discretion to be exercised or explicitly states that the duty of good faith and fair dealing applies.

In this case, neither the Addendum nor the Retailer Agreement imposes any good faith limitations on Shiseido's absolute right to terminate the Retailer Agreement. The agreement itself allows either party to terminate the arrangement at will and without cause. The Addendum expressly incorporates all of the terms of the Retailer Agreement and states, "All the remaining covenants, terms and conditions of the Retailer Agreement remain in full force and effect." (Kaplan Dec. Ex. B.) By signing an addendum that gave it permission to move without obtaining some modification of Paragraph 18(d), Paxi assumed the risk that Shiseido would terminate the agreement before it had recouped its investment in the new space. To protect its interest, Paxi should have bargained for some type of limitation on Shiseido's right to terminate. It did not.

To the extent that Paxi has a viable claim arising out of Shiseido's failure to supply it with product for the last three months, the claim can be satisfied with a money judgment. Therefore, Paxi has not shown irreparable injury for its breach of contract claim.

### III. Paxi's Claim for Promissory Estoppel.

 Plaintiff also seeks to force defendants to sell it Shiseido products by advancing a "detrimental reliance" claim. There is no such claim under New York law. "Detrimental reliance is an element of equitable and promissory estoppel; there is no independent cause of action for

detrimental reliance." *Brinsights, LLC v. Charming Shoppes of Delaware, Inc.*, 06 Civ. 1745, 2008 WL 216969, at *5 (S.D.N.Y. Jan. 16, 2008). Thus, Paxi's claim is really one for promissory estoppel.

■ "Under New York law, promissory estoppel has three elements: (1) a clear and unambiguous promise, (2) a reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained by the party asserting the estoppel by reason of the reliance." *Id.* "Promissory estoppel is a legal fiction which is used as consideration for contractual consideration where a party relies, to its detriment, on the promises of another *without having entered into an enforceable contract.* It is a narrow doctrine which generally only applies where there is no written contract, or where the parties' written contract is unenforceable for some reason." *DDCLAB Ltd. v. E.I. DuPont De Nemours and Co.*, 03 Civ. 3654, 2005 WL 425495, at *6 (S.D.N.Y. Feb. 18, 2005) (internal citations omitted) (emphasis added).

■ Under a theory of promissory estoppel, Paxi alleges: "By entering into the Retailer Agreement Addendum Shiseido make [sic] an implied and explicit promise to supply Paxi with Shiseido products. Shiseido knew that Paxi depended for its income on the sale of almost exclusively Shiseido products." (Compl. ¶ 19.)[3] This claim is baseless.

Paxi's promissory estoppel claim fails for the same reason that its claim for breach of good faith obligation fails. This is not a situation where there is a promise but no contract. Rather, the parties have a written agreement—the Retailer Agreement as modified by the Addendum—and it is absolutely clear that it bars any promise other than those set forth in the agreement:

no representations have been made which are not contained herein and that *this Agreement contains the entire agreement of the parties with respect to the subject matter hereof. This Agreement may be modified only be written agreement signed by the parties hereto.*

(Kaplan Decl. Ex. A. ¶ 23 (emphasis added).) The contract itself gives Shiseido the right to terminate at will at any time; the Addendum, which modifies the Retailer Agreement, contains an integration clause that incorporates all of the provisions of the Retailer Agreement,

*The foregoing obligations are in addition to, and not in lieu of, the terms and conditions set forth in the Retailer Agreement. In the event there is any conflict between the terms in this Addendum and those in the Retailer Agreement, the terms in this Addendum govern. All the remaining covenants, terms and conditions of the Retailer Agreement remain in full force and effect.*

(Kaplan Decl. Ex. B (emphasis added).)

Pursuant to this clause, both the termination clause of Paragraph 18 and the written modification requirement of Paragraph 23 of the Retailer Agreement survive the amendment, because there is no provision in the Addendum that conflicts with them.

Paxi argues that the "WHEREAS" clauses of the Addendum implied a promise that Shiseido would continue to supply Paxi with Shiseido cosmetic products for some period of time. For example, Paxi contends that the reference to "certain obligations" in the second WHEREAS

---

**3.** Paxi's complaint contains two paragraphs with the number 19. One is listed under the section "Breach of Contract," the other under

"Detrimental Reliance." This citation refers to the paragraph under the "Detrimental Reliance" section.

clause shows that Shiseido knew about plaintiff's new lease, and that this implicitly promises that Shiseido would continue to supply plaintiff with defendants' cosmetic products without limitation. But the parties' express incorporation of all the provisions of the existing agreement—including the termination clause—give the lie to that argument.

■ Furthermore, a promissory estoppel claim requires that reliance be reasonable, and "Under New York law 'reasonable reliance is precluded when an express provision in a written contract contradicts a prior alleged representation in a meaningful fashion.'" *Thayer v. Dial Indus. Sales. Inc.*, 85 F.Supp.2d 263, 272 (S.D.N.Y.2000) (*quoting M.H. Segan L.P. v. Hasbro, Inc.*, 924 F.Supp. 512, 527 (S.D.N.Y.1996)). The alleged representations that Paxi relies on in this case are contrary to the terms of the Retailer Agreement, which expressly state the agreement can only be modified in writing, and that either party may terminate the agreement at any time. Paxi cannot do an end run around these provisions by manufacturing an implied promise to the contrary.

Accordingly, plaintiff fails to convince this Court that it is likely to succeed on the merits of its promissory estoppel claim.

### Conclusion

The motion for a preliminary injunction is denied.

The parties are directed to appear before this Court at 11:00 AM on September 11, 2009, in Courtroom 14C to discuss a discovery schedule.

This constitutes the order of this Court.