Chrisanntha, Inc. v deBaptiste (2021 NY Slip Op 04290)





Chrisanntha, Inc. v deBaptiste


2021 NY Slip Op 04290


Decided on July 9, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 9, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, LINDLEY, AND TROUTMAN, JJ.


203 CA 20-00607

[*1]CHRISANNTHA, INC., PLAINTIFF-RESPONDENT,
v
MARC DEBAPTISTE AND MELISSA DEBAPTISTE, DEFENDANTS-APPELLANTS. 






WOODS OVIATT GILMAN LLP, ROCHESTER (WARREN B. ROSENBAUM OF COUNSEL), FOR DEFENDANTS-APPELLANTS. 
ERNSTROM & DRESTE, LLP, ROCHESTER (TIMOTHY D. BOLDT OF COUNSEL), FOR PLAINTIFF-RESPONDENT.


 Appeal from an order of the Supreme Court, Ontario County (Brian D. Dennis, A.J.), entered January 16, 2020. The order granted the motion of plaintiff for partial summary judgment on liability and for summary judgment dismissing the counterclaim, and denied the cross motion of defendants for summary judgment dismissing the complaint and for summary judgment on their counterclaim. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this breach of contract action, defendants appeal from an order that granted plaintiff's motion for partial summary judgment on liability and for summary judgment dismissing the counterclaim and denied defendants' cross motion for, inter alia, summary judgment dismissing the complaint. In August 2016, defendants executed an agreement to purchase one of many condominiums being constructed by plaintiff. The purchase price was based on builder-grade finishes, but the agreement permitted defendants to make modifications or upgrades of various fixtures, with any difference in cost being charged to them. Of particular importance to defendants was having a closing date on or before December 30, 2016 so that they could claim a $9,000 federal tax credit. Due to the importance of that tax credit to defendants, an addendum was attached to the agreement, providing that defendants would receive a $9,000 credit from plaintiff if title could not be transferred by December 30, 2016, "through no fault of [defendants]." In addition, the addendum required plaintiff to "provide [defendants] with a list of finish selections and dates" by which defendants had to make their selections in order for plaintiff to meet the expedited closing date. In the event defendants did not make their selections by the dates set by plaintiff, and that omission was a "material cause" of plaintiff's failure to transfer title by the deadline, defendants would not be entitled to the $9,000 credit.
The addendum further provided that, should plaintiff fail "to perform or observe any of the covenants or obligations to be performed or observed . . . prior to closing," defendants would be entitled to a return of any deposit or any other sums paid to plaintiff and to pursue an action for specific performance as their "sole remedies prior to closing." In addition, "[s]hould any conditions to [defendants'] obligations not be satisfied or waived prior to closing, [defendants] [would] have the right to terminate the Contract in which event [their] deposit" would be refunded and they would have no further liability to plaintiff.
The agreement contained a standard provision for attorney approval, stating that it was "subject to the written approval, as to form[,] of [defendants'] attorney." Defendants' attorney thereafter approved the agreement and all attachments and addenda thereto as to form, "subject to [defendants'] satisfactory receipt, review and acceptance of [the] list of finish selections and [*2]dates when [they] must notify [plaintiff] of [their] selections in order to transfer title." The attorney also added the following provision, "[defendants] may terminate the . . . [a]greement should [defendants] and [plaintiff] fail to agree on the terms of the List."
Plaintiff provided defendants with a finish selection schedule, listing all of the categories of items for which selections were required and the dates by which those decisions needed to be made in order to transfer title by the deadline. The schedule did not list the myriad of finishes available for each item. Following receipt of that schedule, defendants paid the contractually-required deposit.
Defendants failed to meet the finish selection deadlines listed in the schedule, and the parties disagree as to the cause of the delay. Regardless of the cause, it became apparent that plaintiff would not be able to transfer title by the closing deadline. Defendants' attorney subsequently wrote to plaintiff's attorney, informing plaintiff's attorney that defendants were terminating the agreement, as supplemented by the addendum (collectively, contract), "on several grounds, including but not limited to, the fact that the parties have been unable to mutually agree upon modifications, extras and other items."
Plaintiff thereafter commenced this action, asserting causes of action for breach of contract and wrongful termination. Defendants answered and asserted a counterclaim for the return of their deposit. Plaintiff then moved for partial summary judgment on liability and for summary judgment dismissing the counterclaim, and defendants cross-moved for summary judgment dismissing the complaint and on their counterclaim. Supreme Court granted the motion and denied the cross motion. We now affirm.
Defendants contend that their termination of the contract was proper as a matter of law because plaintiff failed to satisfy a condition precedent, i.e., mutual agreement on the cost of the finish selections. They further contend that the addendum provided them with the right to terminate the contract and that their attorney's approval was subject to defendants' satisfactory receipt and acceptance of the finish selections and the parties' mutual agreement on the terms of the list. We reject all of those contentions.
Contrary to defendants' initial contention, the parties' mutual agreement concerning the cost of the finish selections was not a condition precedent to defendants' performance under the contract. "It is well settled that a contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, 'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms' " (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645 [2009], quoting Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; see IDT Corp. v Tyco Group, S.A.R.L., 13 NY3d 209, 214 [2009]). Neither the agreement nor the addendum made the parties' agreement related to the cost of the finish selections a condition precedent to the formation of the contract or defendants' basic obligations under that contract (see generally MHR Capital Partners LP, 12 NY3d at 645; Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 690 [1995]). Conditions precedent are not favored, and "[a] contractual duty will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition" (Ashkenazi v Kent S. Assoc., LLC, 51 AD3d 611, 611-612 [2d Dept 2008]).
Nothing within the four corners of the contract conditioned the formation of the contract or defendants' basic obligations under the contract on potential, future modifications to the contract. The contract provided that plaintiff agreed to sell, and defendants agreed to buy, a builder-grade condominium for a set price. The contract permitted modifications, but only if the parties mutually agreed to those modifications in writing. Those modifications, however, were not a condition of or required by the contract itself. Inasmuch as the remedy for any delay in the closing deadline was a monetary credit, we conclude that any failure of plaintiff to meet its obligations under the addendum did not give defendants a unilateral right to terminate the contract.
Defendants further contend that their attorney's approval, which was a contractual condition precedent (see Moran v Erk, 11 NY3d 452, 456 [2008]), was conditioned on the parties' agreement on the finish selections and, because the parties did not reach an agreement on [*3]the selections, there was no binding contract. We reject that contention. Where, as here, a real estate sales agreement is subject to the approval of attorneys, either for one or both parties, that agreement is "not binding and enforceable until approved by the attorneys" (Pepitone v Sofia, 203 AD2d 981, 981 [4th Dept 1994]; see Moran, 11 NY3d at 456). Although an attorney's approval or disapproval of a contract can be "for any reason or for no stated reason" (Moran, 11 NY3d at 459), the essential terms of the attorney approval clause must be met (see Christ v Brontman, 175 Misc 2d 474, 477-478 [Sup Ct, Monroe County 1997]). As plaintiff correctly notes, the terms of the attorney approval provided defendants' attorney with three options: approve the contract, disapprove the contract or raise a curable objection to the contract, as written (see id. at 478). Nothing in that provision permitted defendants' attorney to unilaterally modify the terms of the contract by adding an additional contractual requirement.
As discussed above, neither the agreement nor the addendum made defendants' acceptance of the finish schedule, agreement on the terms of the schedule or agreement regarding the costs of the finishes a contractual requirement. All that the addendum required was that plaintiff "provide" defendants with the list of finish selections and the deadlines for those selections.
We thus conclude that plaintiff met its initial burden of establishing that defendants breached the contract, and defendants failed to raise any triable issues of fact that would warrant denial of plaintiff's motion or any basis upon which they would be entitled to judgment as a matter of law dismissing the complaint or on their counterclaim.
Entered: July 9, 2021
Mark W. Bennett
Clerk of the Court