[No. F049638. Fifth Dist. Jan. 14, 2008.]

CDF FIREFIGHTERS, Plaintiff and Respondent, v.
RICHARD A. MALDONADO et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 81110, this opinion is certified for publication with the exception of part II.

**Counsel**

Caswell, Bell & Hillison and Russell G. Van Rozeboom for Defendant and Appellant Richard A. Maldonado.

Driscoll & Associates and Thomas J. Driscoll, Jr., for Defendant and Appellant Michael S. Pittman.

Carroll, Burdick & McDonough, Ronald Yank, Gregg McLean Adam and Jennifer S. Stoughton for Plaintiff and Respondent.

OPINION

ARDAIZ, P. J.—

## INTRODUCTION

In this case, we are asked to determine whether the superior court erred in granting summary judgment on a labor union's contract cause of action against two former members, and in denying a petition for writ of mandate filed by one of those members. For the following reasons, we reverse the grant of summary judgment.

## STATEMENT OF THE CASE

On June 3, 2004, Michael S. Pittman (Pittman) filed a petition for a writ of mandate in Sacramento Superior Court seeking reversal of the fine imposed against him by CDF Firefighters (CDFF), a labor union, and reinstatement as a member. In his petition, Pittman alleged that "appeal of the expulsion decision was excused due to futility or impossibility since the matter would be heard by the very Board participants who had acted against . . . Petitioner, thereby rendering the confirmation of Petitioner's expulsion inevitable, and Petitioner's appeal pointless."

On June 16, 2004, CDFF filed a complaint for damages in Fresno Superior Court alleging that Richard A. Maldonado (Maldonado) and Pittman each owed CDFF over $22,000 in fines. In the complaint, CDFF alleged that Maldonado and Pittman were members of CDFF and breached their contractual obligations to CDFF by failing to pay fines that were properly levied against them. CDFF also alleged that Maldonado and Pittman "at all times acted in concert with each other and on behalf of each of them and the other."

On October 5, 2004, the cases were consolidated in Fresno Superior Court.

On June 1, 2005, CDFF filed its motion against Maldonado and Pittman (defendants or appellants) for summary judgment, or alternatively, summary adjudication of three issues: (1) that defendants were afforded due process; (2) that defendants were legitimately expelled from membership; and (3) that the fines imposed were valid. In its notice of motion, CDFF also asked for summary judgment or adjudication against Pittman on his petition for writ of mandate.

On June 3, 2005, Pittman filed his motion for summary judgment, or alternatively, summary adjudication against CDFF. Pittman argued that he was wrongfully expelled from and fined by CDFF in violation of his common law right of "substantive rationality and procedural fairness" and his statutory rights under Corporations Code section 7341. He also argued that he was not required to exhaust internal union remedies because doing so was futile.

On August 3, 2005, Pittman filed his opposition to CDFF's motion for summary judgment, including a 133-page separate statement. Maldonado filed a joinder in Pittman's opposition on August 10, 2005. On August 12, 2005, CDFF filed an objection to Maldonado's joinder in the Pittman opposition, arguing that it was untimely.

The cross-motions for summary judgment/adjudication were heard together on August 17, 2005. At the hearing, defendants raised evidentiary objections to some of the evidence proffered by CDFF. The superior court took the matter under submission and, on September 15, 2005, issued its decision and order granting CDFF's summary judgment against defendants, granting CDFF's motion for summary judgment against Pittman on his petition for writ of mandate, and denying Pittman's motion for summary judgment against CDFF. The superior court concluded that CDFF had carried its burden for summary judgment on its contract cause of action against defendants. The superior court also concluded that Pittman could not file a petition for writ of mandate because he failed to exhaust his internal union remedies. Finally, the superior court concluded that Maldonado's joinder in the Pittman opposition should be denied given that it was untimely and failed to provide a separate statement of facts. The superior court, however, did not rule on the evidentiary objections that defendants had raised at the summary judgment hearing.

Maldonado filed a motion for new trial on September 23, 2005. Pittman filed a motion for a new trial on October 5, 2005. A hearing on the motions occurred on November 3, 2005. The trial court took the motions under submission and issued a written order denying the motions on November 23, 2005. In its order, the superior court ruled on the evidentiary objections made by defendants at the summary judgment hearing.

CDFF submitted a proposed judgment to the superior court which imposed joint and several liability against defendants for each other's fines with the net effect that each man became jointly liable for over $44,000. The superior court signed the judgment on November 23, 2005.

On January 20, 2006, Pittman and Maldonado filed their appeals.

# FACTS

## A. Structure of CDFF

CDFF is, under the Ralph C. Dills Act, Government Code section 3512 et seq., the exclusive bargaining representative for firefighters employed by the State of California. CDFF is a California nonprofit mutual benefit corporation divided into chapters, which are autonomous geographical units affiliated with CDFF by charter. Some chapters are incorporated, and some are not. Pittman belonged to the San Benito-Monterey chapter. That chapter is a nonprofit unincorporated association, with its own constitution, bylaws, executive board, and officers elected by its membership. Chapters are organized geographically into regions, the purpose of which is to provide representation on CDFF's board of directors (the State Board). Pittman's chapter is part of "Region IV," which also included the Fresno-Kings chapter and the Tulare chapter. Region IV also is an autonomous nonprofit unincorporated association with its own constitution, bylaws, executive board, and officers elected by membership. The elected chapter directors, such as Pittman, are members of the regional boards. The elected regional directors are members of the State Board.

Pittman is a fire captain, and has been a rank-and-file employee of the California Department of Forestry and Fire Protection (Department) for more than 20 years. Pittman was an active member of CDFF and, in November 2002, was elected chapter director for the San Benito-Monterey chapter. Although he was a member of Region IV's board of directors, Pittman was not an elected officer of Region IV.

During the relevant time period, Maldonado was a member of CDFF and the Region IV director. Maldonado served as Region IV's representative on the State Board.

## B. CDFF's Disciplinary Process

CDFF's Constitution and Operating Procedures and Policy Handbook (the bylaws or OPH) govern membership. CDFF's corporate bylaws contain a "Discipline" section, OPH 413.[1] OPH 413 provides that the State Board or a member may bring charges against another member or a chapter on the basis of 13 categories of misconduct. OPH 413 mandates specific due process protections, including written and detailed charges, service on the accused, time to prepare a defense, a timely hearing, the right to present a written

---

[1] Although CDFF's bylaws have since been renumbered, we will refer to CDFF's bylaws by their prior numbering system for clarity.

answer to the charges, the right to present and cross-examine witnesses, the right to be presumed innocent until proven guilty, the right to a closed hearing, the right to representation by another member, the right to a timely decision, and a statute of limitations. The bylaws require members to exhaust internal union remedies before seeking judicial recourse.

A three-member hearing committee appointed by the CDFF president hears the charges. The hearing committee that heard the charges against appellants consisted of CDFF officers Steve Barrett (chairperson), Dan Todd, and Rich Garcia (the Barrett Hearing Committee). CDFF hearing committees adhere to a specific set of rules in conducting hearings. Those found guilty face any number of possible penalties, including restitution, removal from office, suspension of up to a year, and expulsion, without limitation as to the conduct befitting any particular penalty.

### C. Pittman's Charges Against Former CDFF President

On September 12, 2002, Pittman filed charges against then CDFF president and State Board member Tom Gardner (Gardner) pursuant to the provisions of OPH 413. Pittman charged that Gardner's refusal to reinstate him to CDFF membership following his return to service with the Department in 2002 was improperly motivated. Pittman had lost his membership in CDFF in January 2000 at the same time that the Department had taken action to terminate him from state employment. The Department's action was overturned by the State Personnel Board in December 2001, and Pittman returned to work in January 2002 and was assigned to the San Benito-Monterey unit. Upon his assignment to the unit, Pittman had sought to resume his active membership in CDFF, but Gardner had declined to reinstate his membership until July or August of 2002. Pittman attached as an exhibit to his complaint against Gardner the transcript of a tape recording of a conversation between Pittman and Gardner, which was purported to be taped "on 3/8/2000 in open forum."

The hearing committee that was convened to hear Pittman's charges consisted of three CDFF members: Michael Witesman (chairperson), Jim Rismiller, and Woody Allshouse (the Witesman Hearing Committee).

Maldonado represented Pittman on the charges. Gardner chose CDFF state supervisory representative Ray Snodgrass (Snodgrass) as his representative.

Prior to the November 13, 2002 hearing on Pittman's charges, Pittman made several motions to the Witesman Hearing Committee, including, among others, a motion to recuse Woody Allshouse from the hearing committee, a motion to prevent Snodgrass from representing Gardner, a motion to compel witnesses to appear, and a motion to continue the hearing until the December

2002 State Board meeting when witnesses would be available. All of Pittman's motions were denied, and the Witesman Hearing Committee subsequently dismissed his charges against Gardner.

### D. Charges Against Appellants

On November 12, 2002, division chief Larry German, a member of the Fresno-Kings chapter, filed OPH 413 charges against Pittman, Maldonado, and another member of the Region IV board alleging that they had violated his right to attend the statewide conference as a voting delegate by voting in favor of a Region IV bylaw disallowing members holding the rank of assistant chief and above from being elected to Region IV offices. Appellants received notice of the charges.

In December 2002, forester Darla Mills also filed similar OPH 413 charges, and complained that the Region IV bylaw had been adopted improperly. Ultimately, Mills's charges against Pittman were dismissed by the Barrett Hearing Committee in October 2003. Maldonado, however, was found guilty of two of Mills's charges.

Also in December 2002, the State Board directed then vice-president Robert Wolf to investigate whether Pittman had illegally taped a conversation with Gardner on March 8, 2000.

On January 21, 2003, the Witesman Hearing Committee filed charges with the State Board against Pittman alleging that a Region IV check in the amount of $120 had been submitted on his behalf for transcripts for the Gardner hearing, and that he used three days of union release time for the Gardner hearing. To appeal the Witesman Hearing Committee's denial of his motions, Pittman had requested the hearing transcript and was advised that it would require a $120 deposit. The Region IV board voted to pay the expense, and the Region IV treasurer submitted a $120 check to CDFF, which was returned uncashed because it appeared to be an improper expenditure of union funds. Pittman then submitted a personal check for $120, which was cashed. It was later discovered that CDFF president Robert Wolf had already authorized payment for preparation of the transcript from CDFF funds, and preparation of the transcript had already commenced before Pittman had been given the $120 estimate. With respect to the use of union release time, Pittman had used his own vacation/holiday time and the use of release time in these circumstances was routine and not proscribed by the OPH. The Witesman Hearing Committee's charges against Pittman were never served on him and were never ruled upon by the union.

On January 23, 2003, State Board member and CDFF's retiree representative Ron Bywater (Bywater) filed OPH 413 charges against defendant Pittman

alleging that a Region IV check in the amount of $120 had been submitted on Pittman's behalf for transcripts of the Gardner hearing, that they had used three days of union release time for the Gardner hearing, and that Pittman had improperly taped Gardner on March 8, 2000. Bywater was a department retiree living out of state, and he apparently did not have personal knowledge of any of his allegations against Pittman, although Bywater had access to documentary evidence. On January 23, 2003, State Board member Allshouse personally served Bywater's charges on Pittman, and on January 28, 2003, CDFF president Wolf served them by mail.

### E. Imposition of Trusteeship

On January 22, 2003, without prior notice to State Board members that a new bylaw would be discussed and after barring Maldonado from attending the discussion on the new bylaw, the State Board voted to adopt a new bylaw, OPH 413.06, which for the first time authorized trusteeships over chapters and regions. Maldonado was present for the vote on the new bylaw only and voted against the new bylaw. Then, on January 23, 2003, in an executive session that excluded Maldonado, the State Board voted to impose an emergency trusteeship over Pittman's San Benito-Monterey chapter, the other chapters of Region IV, and Region IV in its entirety, removing its entire board of elected officials from office, and appointing trustees to take charge of their financial records and property.

The State Board and CDFF president Wolf imposed a trusteeship over Region IV and its three chapters based on a number of allegations of "financial malfeasance and threat to democratic processes." In his directive imposing trusteeship, Wolf noted that he and the State Board were presented with "hard evidence supporting the allegations." In the same directive, Wolf stated: "I will provide a hearing officer to conduct a hearing and to inform both officers and members of the affected regions and chapters of the time and place of a hearing to make a recommendation to the [State Board] about whether the trusteeships, or any of them, should remain in effect."

The imposition of the trusteeship, including the notice to members and the appointment of a hearing officer to determine the validity of the trusteeship complied with CDFF's newly adopted bylaw.

On February 13, 2003, the State Board held a meeting for members of Region IV and its chapters. At this meeting, the State Board distributed copies of the unadjudicated OPH 413 charges against Pittman, including the Bywater charges, discussing them as justification for the trusteeship. Under the OPH, Pittman had a right to closed hearings on the charges. The meeting was followed immediately by a hearing on the trusteeship before the appointed hearing officer, State Board member Ken Hale (Hale). Pittman

testified at the hearing. On February 24, 2003, Hale concluded that the trusteeship was validly imposed for Region IV and Pittman's San Benito-Monterey chapter but that the trusteeship should be lifted for the other two chapters in Region IV.

### F.   Subsequent Events After Imposition of Trusteeship

On January 24, 2003, Pittman filed amended charges against CDFF with the State's Public Employment Relations Board (PERB) alleging that CDFF had violated the Ralph C. Dills Act, Government Code section 3512 et seq., when it (1) imposed the trusteeship, (2) had Bywater file internal charges against Pittman, (3) had its attorneys file false police reports against Pittman, and (4) had an investigator submit a report alleging a violation of Penal Code section 632, subdivision (a), which prohibits certain taping of conversations. These charges were later dismissed, and Pittman filed further amended charges on June 4, 2004. Ultimately, on December 31, 2004, these amended charges were dismissed.

On February 20, 2003, Bywater filed two additional charges against appellants alleging (1) that they refused to comply with the CDFF trustees by, among other things, directing Region IV's treasurer to not cooperate, and (2) that on February 13, 2003, Pittman disrupted the February 13, 2003 membership meeting concerning the trusteeship. On March 6, 2003, Bywater filed another charge against Pittman alleging that Pittman showed "a pattern and practice and intent to disrupt the operations of" CDFF by failing to exhaust his internal union remedies before filing the PERB complaint. On March 10, 2003, Bywater withdrew the charge relating to defendants' use of release time.

On March 19, 2003, the State Board, through its attorney, wrote to the Sacramento County District Attorney asking her to file felony criminal charges against Pittman for illegally taping his conversation with Gardner and filing a false report statement, executed under oath, in his PERB complaint. The letter provided detailed information on witnesses and evidence supporting the State Board's position that Pittman had committed perjury and violated Penal Code section 632, subdivision (a).

In May 2003, Bywater proposed, and the State Board adopted, an attorneys' fee bylaw, OPH 413.P, regarding outside litigation to collect fines, dues, and assessments.

On June 4, 2003, well beyond the OPH 413.03.B's 90-day limit for the hearing of charges, Barrett scheduled a hearing on the Bywater charges for June 27, 2003. As permitted under OPH 413.03.C, Pittman submitted a

written response to the charges. Pittman also protested Barrett's adjudication of the charges, since Barrett and the other hearing committee members had attended the membership meeting and the trusteeship hearing, both of which concerned the Bywater charges that were the subject before the hearing committee.

Barrett postponed the hearing without notifying Pittman and without setting a new date. Months later, on October 3, 2003, Barrett sent Pittman notice of an October 17, 2003 hearing and advised Pittman that the hearing committee was recused from hearing Bywater's charges regarding disruption of the membership hearing, but was not recused from hearing the remaining Bywater charges.

### 1. Hearing on German Charges

Appellants eventually advised the Barrett Hearing Committee that they would not attend the hearing on the charges filed by Larry German (the German charges), but would respond in writing. Appellants were advised with respect to written response procedures.

On or about May 23, 2003, appellants provided an eight-page (plus approximately 20 pages of exhibits) written response to the German charges.

On June 30, 2003, the Barrett Hearing Committee issued its written decision on the German charges, sustaining two of the five charges against appellants. Appellants were officially reprimanded by the Barrett Hearing Committee for their actions and warned never to repeat them. Maldonado was found 100 percent responsible for the reimbursement of actual expenses incurred by Larry German through the hearing process. The decision advised the parties that they had 30 days from their receipt of the decision to appeal to the State Board.

Maldonado was informed, on or about July 21, 2003, that Larry German claimed $743.30 as expenses. On July 30, 2003, CDFF member Byron Darrington wrote a one-page letter to Barrett on behalf of Maldonado, in which he stated: "we have no intention of appealing before your State Board of Directors."

On August 14, 2003, CDFF president Wolf prepared a two-page demand letter to Maldonado seeking payment of the fine levied in the German decision. All relevant documentation was provided with the letter.

### 2. Hearing on Bywater Charges

On June 19, 2003, Pittman provided a seven-page response, dated June 17, 2003, to the charges filed by Ron Bywater (the Bywater charges). Pittman

also provided a seven-page letter dated June 17, 2003, wherein he protested Barrett's further involvement and stated that he "would not attend any further proceedings internally."

The Barrett Hearing Committee heard the Bywater charges on October 17, 2003. The hearing was audio-recorded. Bywater was present, but neither appellants nor their representative, Byron Darrington, attended the hearing.

On November 23, 2003, the Barrett Hearing Committee issued its tentative decision. Charges were upheld against Maldonado for improper use of union funds, and against both appellants for refusing to comply with the lawful direction of CDFF trustees. A number of charges were dismissed.

The tentative decision proposed expelling both appellants and fining each of them 30 percent of the costs of the trusteeship. CDFF was apportioned the remaining 40 percent of the costs of the trusteeship. The decision was served on appellants.

Appellants were given 15 days to provide additional documents in response to the tentative decision. Neither responded. The Barrett Hearing Committee's final decision was issued on December 21, 2003. The final decision advised each of the parties that an appeal could be made to the State Board within 30 days. No appeals were filed.

On January 29, 2004, CDFF president Wolf wrote to appellants informing them that the 30-day window of appeal had officially expired at "1700" hours on January 12, 2004. Wolf advised appellants that they were expelled from membership, effective "0800" hours on January 13, 2004. On March 26, 2004, Ronald Yank, CDFF's attorney, wrote to appellants advising them of the amount of the fine and requesting payment by April 16, 2004.

On April 7, 2004, Pittman requested an extension until April 30, 2004, to respond to the March 26, 2004 letter. The extension was granted, but no further response was received from either appellant subsequent to April 7, 2004.

## DISCUSSION

### I.

### Standard of Review

The grant of summary judgment is subject to de novo review. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12

Cal.Rptr.3d 615, 88 P.3d 517].) "A three-step analysis is used in reviewing a motion for summary judgment. [Citations.] First, the appellate court must identify the issue framed by the pleadings. [Citations.] Second, we determine whether the moving party has met its statutory burden of proof. [Citation.] . . . Once the defendant has made such a showing, the burden shifts to the plaintiff to produce evidence that a triable issue of fact exists as to an essential element of the cause of action. [Citation.] [¶] The third and final step is to determine whether the opposing party has demonstrated that a triable issue of fact exists as to the cause of action. [Citation.] In determining whether the nonmoving party, in this case the plaintiff, has demonstrated the existence of a triable issue of fact, we must strictly construe the moving party's evidence, and liberally construe the opposing party's evidence, with any doubt as to the granting of the motion being resolved in favor of the opposing party. [Citation.]" (*Renna v. County of Fresno* (2000) 78 Cal.App.4th 1, 5 [92 Cal.Rptr.2d 586].)

## II.*

### Pittman's Petition for Writ of Mandate

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.

### CDFF's Breach of Contract Cause of Action

The superior court granted CDFF's motion for summary judgment on its complaint for damages against appellants based upon a breach of contract cause of action. On appeal, CDFF contends that appellants have waived their right to challenge the breach of contract cause of action because appellants failed to exhaust their internal union remedies. We disagree.

### A.

### Exhaustion of Internal Union Remedies

According to CDFF, because appellants failed to challenge the amount of the damages award before the State Board, they have "foregone their opportunity to challenge it in court." We disagree. The exhaustion requirement in CDFF's bylaws, which provides that "[n]o officer or member of the Association shall resort to judicial proceedings of any kind, before any

---

*See footnote, *ante*, page 1226.

forum, with regard to any matter pertaining to this organization or its local chapters, or his/her office, until all remedies provided for within the Constitution and Bylaws/Organizational Policy have been fully exhausted," does not prevent a union officer or member from defending himself or herself from a lawsuit brought by the union. The plain language of that bylaw requires that a union officer or member fully exhaust internal union remedies before resorting to judicial proceedings of any kind. In this case, however, it is the union that is resorting to a judicial proceeding to enforce a disciplinary fine. Thus, the bylaw is inapplicable to appellants.

CDFF also contends that appellants' failure to appeal the amount and reasonableness of the fine precludes their subsequent challenge on appeal. According to CDFF, the amount and reasonableness of the fine is presumptively correct because appellants were provided fair procedure when they were permitted to challenge the fine and elected to not do so. In support of this proposition, CDFF cites *McConville v. Milk W. D. Union* (1930) 106 Cal.App. 696, 698 [289 P. 852] (*McConville*), wherein the court stated "it is held generally that with respect to the merits of the charges which have resulted in suspension or expulsion of the member the province of the court is restricted to the ascertainment of whether there was any evidence whatever before the union to support its conclusion, and that it may not consider the weight of such evidence nor substitute its judgment thereon for the judgment of the tribunal before whom the member was tried [citations]."

However, *McConville, supra*, 106 Cal.App. 696, is factually distinguishable from the present case. In *McConville*, the union member brought an action for damages against the union (*id.* at p. 697) whereas in this case, the union brought an action for damages against union members. Moreover, *McConville* arose from the suspension of a union member for a period of 90 days and did not involve a fine. (*Ibid.*)

■ We agree with the general rule that the decision to expel or suspend a member is subject to deferential review unless a vested or fundamental right is involved because the courts should not intervene in the internal workings of a union. (See, e.g., *Bush v. International Alliance* (1942) 55 Cal.App.2d 357, 363 [130 P.2d 788].) However, where a union seeks to use the courts to obtain and enforce a money judgment, we believe that it should be treated like any other civil litigant who seeks such judicial relief. Thus, CDFF must establish that it is entitled to money damages on its contract cause of action against appellants by showing proof on all of the elements of a contract cause of action.

We also are unaware of any legal authority that holds that appellants' failure to challenge the amount and reasonableness of the fine prevents this court from determining whether the prerequisites for a contract action have been met. On this issue, an appellate court in the State of Illinois has reached the same conclusion. (See *Local 165 v. Bradley* (1986) 149 Ill.App.3d 193, 202–203 [102 Ill.Dec. 20, 499 N.E.2d 577, 583–584] ["It might be argued that if an exhaustion provision exists under the [union's] constitution or . . . bylaws, defendants' failure to exhaust intra-union remedies is a waiver of any objections to the fines. However, we do not find it so. This is not a suit against a union or union official brought by a union member . . . . Rather, it is a suit brought by a union to collect union fines by obtaining a money judgment in our courts that is enforceable by the full coercive power of this state. As noted above, the union is free to file such a suit, but it must abide by the same principles of contract law that would apply to any other litigant."].)

## B.

## Motion for Summary Judgment

■ CDFF filed a claim for money damages based upon an alleged breach of contract by appellants. A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas. Co.* (2004) 116 Cal.App.4th 1375, 1391, fn. 6 [11 Cal.Rptr.3d 412] [stating elements].) Pittman and Maldonado[2] contend that CDFF failed to show the amount of damages and the reasonableness of the fines. According to appellants, CDFF "could not establish a prima facie entitlement to summary judgment without showing both the fact *and the amount* of damages. [Citation.]" (*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1106 [27 Cal.Rptr.3d 741].) We agree with appellants that CDFF was not entitled to summary judgment because it did not establish its prima facie case on the issue of damages, or alternatively, because there is a triable issue of fact with respect to the amount and reasonableness of the fine.[3]

---

[2] Although the superior court concluded that Maldonado failed to file a timely and procedurally proper opposition to CDFF's motion for summary judgment/adjudication, we agree with Maldonado that the failure to file an opposition does not excuse CDFF from meeting its burden of showing the damages on a breach of contract cause of action.

[3] Although we are reversing the grant of summary judgment, we note that the judgment imposing joint and several liability does not appear to be supported by any provision in CDFF's bylaws.

██ In determining that CDFF met its burden on the issue of damages, the superior court concluded that it could not "re-weigh the evidence or second-guess" the union's decision to impose the fines because the union complied with the terms of its bylaws and provided "fair procedure."[4] The superior court erred in concluding that it could not independently review the amount and reasonableness of the fine. The fact that section 1019 of the bylaws provides that the Barrett Hearing Committee can assess a penalty equivalent to "[f]ull and partial restitution, where the consequences of the offense can be measured in material terms" and the fact that the union contends that the fines constituted restitution does not preclude the superior court from independently determining whether the amount of the damages in this case was actually restitutionary. As a civil litigant seeking to obtain and enforce a money judgment, CDFF must, among other things, meet its burden of proof that the amount of damages constituted full or partial restitution, or that the amount of damages could be supported by some other provision of the bylaws. Furthermore, the failure to exhaust internal union remedies on the issue of the amount of damages is not a concession by appellants that there is no dispute about the amount of the damages attributable to the charged misconduct of the appellants.

██ Similarly, the superior court can independently determine whether the amount of the fine was reasonable. (See *NLRB v. Boeing Co.* (1973) 412 U.S. 67, 76–77 & fn. 12 [36 L.Ed.2d 752, 93 S.Ct. 1952]; cf. *Jost v. Communications Workers of America* (1970) 13 Cal.App.3d Supp. 7, 12 [91 Cal.Rptr. 722] ["No pleading challenges the reasonableness of the amount of the fine. Nothing in the settled statement on appeal touches on this subject. Plaintiff's brief does not argue the point. It must be assumed that reasonableness of the amount of the fine was not an issue."].) Although the superior court found that CDFF provided appellants with fair procedure, that finding alone is insufficient to satisfy CDFF's burden of proof on its motion for summary judgment.

Thus, the superior court erred in granting CDFF's motion for summary judgment.

---

[4] See *Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 550, fn. 7 [116 Cal.Rptr. 245, 526 P.2d 253] ("It is important to note that the legal duties imposed on defendant organizations arise from the common law rather than from the Constitution as such[.] . . . In an attempt to avoid confusing the common law doctrine involved in the instant case with constitutional principles, we shall refrain from using 'due process' language and shall simply refer instead to a requirement of a 'fair procedure.' ").

## DISPOSITION

The judgment granting CDFF's motion for summary judgment is reversed. Respondents to bear costs.

Harris, J., and Kane, J., concurred.

A petition for a rehearing was denied February 5, 2008, and the opinion was modified to read as printed above.