**PRESTIGE BRANDS INC. and Blacksmith Brands, Inc.,**
Plaintiffs,

v.

**GUARDIAN DRUG COMPANY,**
Defendant.

**Guardian Drug Company, Counterclaim Plaintiff,**

v.

**Prestige Brands, Inc. and Blacksmith Brands, Inc., Counterclaim Defendants.**

**Guardian Drug Company, Third–Party Plaintiff,**

v.

**NuSil Technology LLC, Third–Party Defendants.**

No. 12 CV 7778 (VB).

United States District Court,
S.D. New York.

April 18, 2013.

proceeding but had helped tenants prepare and submit complaints to the agency).

Todd R. David, Joseph Gerard Tully, Alston & Bird, LLP, New York, NY, Lisa R. Bugni, Alston & Bird LLP, Atlanta, GA, for Plaintiffs and Counterclaim Defendants.

David E. De Lorenzi, Gibbons P.C., Newark, NJ, for Defendant and Counterclaim Plaintiff.

## MEMORANDUM DECISION

BRICCETTI, District Judge.

Plaintiff Prestige Brands Inc. ("PBI") and its affiliate, plaintiff Blacksmith Brands, Inc. ("Blacksmith"), market and sell over-the-counter healthcare products to retailers. Defendant-third-party plaintiff Guardian Drug Company ("Guardian") is a drug manufacturer that sold certain healthcare products to plaintiffs. In this action, PBI and Blacksmith assert breach of contract and other claims against Guardian arising from three product recalls involving products supplied by Guardian. With respect to the claims arising out of one of the recalled products, Guardian asserts third-party claims against NuSil Technology LLC ("NuSil"), the producer of that product's active ingredient.

Before the Court is NuSil's motion to dismiss the third-party complaint (Doc. # 18). For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

For purposes of ruling on NuSil's motion to dismiss, the Court accepts as true all allegations of the third-party complaint, as forth below.

NuSil manufactures a product known as MED–341, which is used in certain anti-gas medications. Between April 2010 and February 2011, Guardian purchased from NuSil three shipments of MED–341, which Guardian used to manufacture "Pedia-Care® Infant Gas Relief Drops."

In the spring of 2011, NuSil discovered that certain lots of MED–341 sold by Nusil had been subject to "possible microbial contamination." Nusil reported its discovery to the Food and Drug Administration,

and initiated a voluntary recall. In August 2011, "NuSil requested Guardian to initiate and service on its behalf a recall of several products Guardian manufactured containing the [MED–341] sold by NuSil." Guardian complied and conducted the recall.

Guardian contends NuSil agreed, "in accordance with industry standards and practices," to "defend, indemnify and reimburse Guardian for all of the expenses it incurred in connection with the recall and the recall-related expenses that are recoverable by Guardian's customers." According to Guardian:

> where parties have not otherwise agreed on how recalls are to be handled and conducted, it is understood in the industry and it is an understood industry practice that when the supplier of an active ingredient requests that its customer initiate and service on its behalf a recall of products that contain a potentially harmful active ingredient, the supplier is responsible for all recall costs that its customer[s] incur[ ]. It makes no sense for Guardian to have agreed to initiate and service on NuSil's behalf the recall, unless NuSil would make Guardian whole for all costs it incurred.

Guardian does not allege it entered into any written agreement with NuSil.

Guardian subsequently requested that NuSil defend and indemnify Guardian for its recall-related expenses. Instead, NuSil refunded to Guardian the full purchase price of the recalled MED–341. Guardian contends it incurred recall-related damages in excess of the amount refunded by NuSil.

Based on the foregoing, Guardian asserts claims against NuSil for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) unjust enrichment; and (5) indemnification.

## DISCUSSION

### I.  *Legal Standard*

"The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (internal quotation marks omitted). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678, 129 S.Ct. 1937; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir.2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id.*

## II. *Analysis*

In support of its motion to dismiss, NuSil has produced purported invoices relating to Guardian's purchases of MED–341. The invoices list several "Terms & Conditions of Sale," which include the following provisions relating to Guardian's ability to maintain a suit against NuSil and where such a suit may be properly brought:

[Guardian]'s exclusive remedy and [NuSil]'s sole responsibility for any claim or cause of action arising under this Agreement is expressly limited to either (1) replacement of all goods shown to be other than as warranted or (2) refund of the purchase price of all goods shown to be other than as warranted.... In no event may [Guardian] commence any action against [NuSil] with respect to the products after the expiration of eighteen (18) months following the date on which [NuSil] delivers the products.... IN NO EVENT SHALL SELLER BE LIABLE TO PURCHASER, WHETHER IN CONTRACT OR TORT OR FOR BREACH OF STATUTORY DUTY, FOR ANY INCIDENTAL, INDIRECT, CONSEQUENTIAL, OR SPECIAL DAMAGES INCLUDING WITHOUT LIMITATION CLAIMS FOR INDEMNIFICATION, LOST REVENUES AND PROFITS.

...

Each party further acknowledges that the agreement between the parties has been entered into and shall be performed by [Guardian] in Santa Barbara County, California, and agrees that the exclusive venue for all actions arising under or in connection with these Terms and the order accepted hereby shall be the Superior Court in and for Santa Barbara County, California.

Based on these terms and conditions, NuSil argues (1) NuSil is not liable for any damages in excess of the purchase price of the MED–341, which NuSil has already refunded to Guardian; (2) venue in this District is improper because of the venue selection clause in the terms and conditions; and (3) Guardian's claims are untimely because Guardian commenced this action more than eighteen months after NuSil's last shipment of MED–341 to Guardian.

In its opposition papers, Guardian argues that the terms and conditions listed on the invoices are inapplicable because Guardian and NuSil allegedly "entered into a new agreement months after its purchase of product from NuSil concerning the recall Guardian serviced on NuSil's behalf." (Guardian Br. at 5).

### A. *Choice of Law*

As a threshold matter, the Court must determine which state's laws are applicable to Guardian's claims. NuSil is a Delaware LLC with its principal place of business in California, and Guardian is incorporated in New Jersey and has its principal place of business there. NuSil argues that—based on the terms and conditions of the invoices—California law applies. Guardian argues that the terms and conditions are inapplicable because the invoices relate to "separate, distinct agreement[s], which [are] not at issue in th[is] litigation." Without further explanation, Guardian then applies New York law.[1]

It appears unlikely that New York law applies to Guardian's claims, as neither Guardian nor NuSil are New York entities, and Guardian does not allege that any relevant events occurred in New York.

1. Neither party argues New Jersey law applies.

However, the Court need not decide whether New York or California law applies, because—as discussed below—Guardian has failed to state a claim under either state's laws.

### B. *Breach of Contract*

■ Under New York and California law, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado,* 158 Cal.App.4th 1226, 70 Cal.Rptr.3d 667, 679 (2008); *see Fischer & Mandell LLP v. Citibank, N.A.,* 632 F.3d 793, 799 (2d Cir. 2011) ("Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."). "In order to form a valid and enforceable contract, it is essential that there be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient consideration." *Netbula, LLC v. BindView Dev. Corp.,* 516 F.Supp.2d 1137, 1155 (N.D.Cal.2007); *see also Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.,* 670 F.Supp. 491, 497 (S.D.N.Y.1987) ("Ordinarily in contract negotiation, enforceable legal rights do not arise until either the expression of mutual consent to be bound, or some equivalent event that marks acceptance of offer.").

■ Here, Guardian has failed sufficiently to allege under either New York or California law that NuSil ever consented to enter into a contract with Guardian with respect to the MED–341 recall. Importantly, the third-party complaint does not explicitly allege that NuSil affirmatively agreed to reimburse and indemnify Guardian for its recall-related expenses. Instead, Guardian asserts NuSil's obligation to indemnify and reimburse Guardian arises from "industry standards and practices," according to which, "where parties have not otherwise agreed on how recalls are to be handled and conducted, it is understood in the industry ... that when the supplier of an active ingredient requests that its customer initiate and service on its behalf a recall ... the supplier is responsible for all recall costs." Guardian appears to concede that Guardian and NuSil never "agreed on how recalls are to be handled," and thus fails to satisfy the first element of a breach of contract claim—the existence of an agreement. *See CDF Firefighters v. Maldonado,* 70 Cal.Rptr.3d at 679; *Fischer & Mandell LLP v. Citibank, N.A.,* 632 F.3d 793 at 799; *see also Cherry River Music Co. v. Simitar Entm't, Inc.,* 38 F.Supp.2d 310, 319 (S.D.N.Y.1999) ("While industry custom and usage or a prior course of dealing between the parties is relevant to determining the meaning of a contract, it cannot create a contract where there has been no agreement by the parties.") (internal quotation marks omitted).

■ In its opposition papers, Guardian summarily states it "entered into a new agreement months after its purchase of product from NuSil concerning the recall Guardian serviced on NuSil's behalf." However, Guardian has failed to identify (1) the individuals who negotiated and entered into the agreement; (2) the specific terms of the agreement; or (3) when and where the agreement was made. Having pleaded no specific facts concerning this new, presumably oral contract, and instead making only the conclusory statement that such a contract exists, Guardian has failed to state a plausible breach of contract claim. *See Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,"

are not sufficient to withstand a motion to dismiss.).

### C. *Implied Covenant of Good Faith and Fair Dealing*

█ Under both New York and California law, "[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties." *Smith v. City & Cnty. of San Francisco*, 225 Cal.App.3d 38, 275 Cal.Rptr. 17, 23 (1990); *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir.1998) (implied covenant of good faith and fair dealing "relates only to the performance of obligations under an extant contract").

█ Because Guardian has failed sufficiently to allege the existence of a contract between Guardian and NuSil, Guardian necessarily has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

### D. *Promissory Estoppel*

█ Under both California and New York law, to establish a claim for promissory estoppel Guardian must demonstrate: (1) NuSil made a clear and unambiguous promise; (2) upon which Guardian reasonably relied; and (3) as a result, Guardian was injured. *Aceves v. U.S. Bank, N.A.*, 192 Cal.App.4th 218, 120 Cal.Rptr.3d 507, 514 (2011); *Paxi, LLC v. Shiseido Americas Corp.*, 636 F.Supp.2d 275, 287 (S.D.N.Y.2009) ("Under New York law, promissory estoppel has three elements: (1) a clear and unambiguous promise, (2) a reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained by the party asserting the estoppel by reason of the reliance." (internal quotation marks omitted)).

█ Here, Guardian has failed to allege that NuSil made a clear and unambiguous promise to indemnify Guardian for its recall-related expenses. Quite to the contrary, the third-party complaint merely alleges that, "[b]ased on well known and regarded industry practice, NuSil knew or should have known that by requesting Guardian to initiate and service on its behalf the ... recall, it was indicating its willingness to defend, indemnify and reimburse Guardian for its ... expenses." These allegations fall far short of successfully pleading a promissory estoppel claim because Guardian does not allege NuSil made any affirmative promise to indemnify and reimburse Guardian, much less "a promise clear and unambiguous in its terms." *Aceves v. U.S. Bank, N.A.*, 120 Cal.Rptr.3d at 514; *see Paxi, LLC v. Shiseido Americas Corp.*, 636 F.Supp.2d at 287.

### E. *Unjust Enrichment*

█ "There is a split of authority in California whether unjust enrichment is a cause of action. One line of cases identifies the elements of an unjust enrichment claim as one where there is (1) the receipt of a benefit, and (2) the unjust retention of the benefit at the expense of another. The other line of cases identifies unjust enrichment as a 'general principle' and not a cause of action." *Cabo Brands, Inc. v. MAS Beverages, Inc.*, 2012 WL 2054923, at *4 (C.D.Cal. June 5, 2012) (citations omitted). To assert a claim for unjust enrichment under New York law, a plaintiff must allege "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir.2001).

Assuming unjust enrichment is a viable claim under the law applicable to this case, Guardian has failed to state a claim because the third-party complaint does not allege facts demonstrating NuSil was unjustly enriched at Guardian's expense. As discussed above, Guardian has failed to allege that NuSil made a promise to reimburse and indemnify Guardian upon which Guardian reasonably relied. Further, as NuSil correctly notes: "the purchase and sale of the NuSil product was an arms length business deal between two sophisticated commercial entities. If Guardian expected to be reimbursed for expenses it may incur in a possible recall, it should have negotiated that term into the sales agreement." Guardian has thus failed to state a claim for unjust enrichment.

### F. *Indemnification*

Finally, Guardian asserts a claim for common law indemnification on the theory that Guardian acted as NuSil's agent in conducting the recall.

"Agency is the fiduciary relationship that arises when [a principal] manifests assent to [an agent] that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Agency § 1.01. "As a general rule, an agent is entitled to indemnification by its principal for losses incurred by the agent in the execution of the agency." *Fid. Mortgage Tr. Serv., Inc. v. Ridgegate E. Homeowners Assn.*, 27 Cal.App.4th 503, 32 Cal.Rptr.2d 521, 525 (1994); *Meadowbrook–Richman, Inc. v. Associated Fin. Corp.*, 253 F.Supp.2d 666, 677 (S.D.N.Y. 2003).

Here, Guardian has failed to allege it was subject to NuSil's control in conducting the recall. Guardian merely alleges that NuSil requested Guardian recall the products at issue, and Guardian complied. These allegations are insufficient to establish an agency relationship between the two entities, and Guardian has thus failed to state a claim for common law indemnification.

### CONCLUSION

Third-party defendant NuSil Technology LLC's motion to dismiss the third-party complaint is GRANTED.

The Clerk is instructed to terminate the motion. (Doc. # 18).

SO ORDERED.