Filed 12/29/25  Campbell v. Universal Technical Institute CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| GERALD CAMPBELL, | C101951 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2021-00307772-CU-CO-GDS) |
| v. | |
| UNIVERSAL TECHNICAL INSTITUTE, INC., | |
| Defendant and Respondent. | |

Universal Technical Institute, Inc. (trade school) suspended Gerald Campbell (Campbell) from its training program after Campbell failed to pay his outstanding tuition. Campbell, representing himself, sued trade school for breach of contract, malice and oppression, negligent infliction of emotional distress, and discrimination in violation of title 42 United States Code section 2000d (prohibiting discrimination on the ground of race, color, or national origin in all programs receiving federal financial assistance).

Campbell, again representing himself, appeals following the trial court's grant of summary judgment, contending:  (1) the trial court erred in denying his request for a continuance to conduct further discovery; (2) trade school modified the parties' contract and he performed under the modified contract; (3) the trial court erred in relying on false

1

information provided by trade school in granting summary judgment; and (4) the trial court erred in denying his request for leave to file an amended complaint to allege new causes of action.

We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Campbell signed an enrollment agreement with trade school for a training program in July 2019. The enrollment agreement provides: "[P]ayment of the tuition associated with the first and each successive enrollment period, outstanding fees and any equipment costs are due prior to the first day of class of each enrollment period, unless approved arrangements have been made with the Financial Aid Office." It further states: "In addition to financial aid for which the student may be eligible, in school cash payment plans are available with no interest or finance charge. . . . Payment plans elected will become an addendum to this enrollment agreement and are legally binding . . . . Payments are due at the first day of the month in which the student payment is scheduled . . . . Failure to make payment as scheduled can result in suspension from class until payment is made . . . ." And "no changes shall be binding unless acknowledged, in writing, by an authorized representative of [trade school], as well as the student."

Campbell was approved for federal and institutional loans, with the federal loans paid to trade school incrementally as Campbell progressed through his program. As of the first day of class of the first enrollment period in August 2019, the loans received by trade school were insufficient to cover Campbell's first enrollment period tuition. Campbell had not paid the balance or reached a payment plan with trade school's financial aid office. Trade school prevented Campbell from attending class. Two days later, Campbell signed a cash payment plan agreeing to make monthly payments of $510 on the first of each month starting September 2019. The cash payment plan informed Campbell that "[f]ailure to make payments as scheduled can result in interruption of [his] training," and if Campbell is "suspended due to late/non-payment, [he] must bring [his]

2

account current before [he] will be allowed to return to class." Trade school permitted Campbell to attend class on the day he signed the cash payment plan.

Campbell failed to make any payments under the cash payment plan. As a result, trade school prevented Campbell from attending class in November 2019. Campbell made a $300 payment in December 2019, but because his account was still delinquent, trade school did not allow him to return to class and eventually suspended him for failure to attend class.

After Campbell's suspension, trade school emailed Campbell a course failure notification without any signatures. The notification informed Campbell that he may retake the course but "all tuition and fees must be paid in full prior to attending" the course.

Campbell sued trade school for breach of contract, malice and oppression, negligent infliction of emotional distress, and discrimination in violation of title 42 United States Code section 2000d.

Trade school filed a motion for summary judgment or summary adjudication. Campbell filed an opposition and requested leave to amend in his opposition to add new causes of action including misrepresentation, concealment, fraud, and intentional infliction of emotional distress. One day before the motion for summary judgment hearing, Campbell filed a request for a continuance.

The trial court denied Campbell's request for a continuance and granted trade school's motion for summary judgment. It dismissed Campbell's complaint with prejudice, implicitly denying Campbell's request for leave to amend the complaint. Campbell timely appeals from the resulting judgment.

# DISCUSSION

## I

### *Motion for Summary Judgment*

A defendant who contends an action has no merit may move for summary judgment. (Code Civ. Proc., § 437c, subd. (a)(1).) A defendant has met its burden of showing that a cause of action has no merit if it has shown that one or more elements of the cause of action cannot be established. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) "The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action." (§ 437c, subd. (p)(2).)

The trial court must grant a motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

We review a grant of summary judgment de novo. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Ibid.*) But the appellant still bears the burden to show error by appropriate citation to the record and authority. (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.) " '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issue. . . . In other words, review is limited to issues which have been adequately raised and briefed.' " (*Ibid.*) The same procedural rules apply to self-represented parties. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

4

*A.      Breach of Contract*

To state a cause of action for breach of contract, a plaintiff must establish: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. (*CDF Firefighters v. Maldonado* (2008) 158 Cal.App.4th 1226, 1239.) " '[I]t is elementary that one party to a contract cannot compel another to perform while he himself is in default.' " (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1367.)

Here, Campbell failed to perform or show that his nonperformance was excused. The enrollment agreement required Campbell to pay the full tuition for the first enrollment period before the first day of class, and the cash payment plan required Campbell to make monthly payments on the first of each month. Trade school established that Campbell failed to make the first period tuition payment before the first day of school or make the monthly payments. The burden thus shifts to Campbell to demonstrate a triable issue as to a material fact exists.

Campbell contends trade school modified the cash payment plan by making an oral announcement to all students and by sending him the unsigned course failure notification that "all tuition and fees must be paid in full prior to attending your last course." He claims the modified agreement required payment of all tuition and fees just one month before the program ended and his $300 payment made in December 2019 satisfied his obligation under the modified agreement. We disregard the oral announcement contention because Campbell fails to support it with any citation to the record. (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 [" '[W]e may disregard factual contentions that are not supported by citations to the record.' "].) And the unsigned course failure notification was not a signed writing between trade school's authorized representative and Campbell that could modify the enrollment agreement.

Campbell appears to contend trade school prevented him from performing by refusing to apply the approved loans to his tuition and preventing him from attending the

5

first day of class.  But at the time, Campbell had not entered the cash payment plan with trade school and the loan payments received by trade school were insufficient to cover his tuition for the first enrollment period.  Trade school acted within its contractual rights to prevent Campbell from attending class until he signed the cash payment plan.

B.    *Malice, Fraud, and Oppression*

The elements of actionable fraud are:  "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages."  (*Okun v. Morton* (1988) 203 Cal.App.3d 805, 828.)  "*All* of these elements must be present if actionable fraud is to be found; one element absent is fatal to recovery."  (*Ibid.*)  "In an action for the breach of an obligation not arising from contract, where . . . defendant has been guilty of oppression, fraud, or malice," the plaintiff may recover punitive damages.  (Civ. Code, § 3294, subd. (a).)

Here, Campbell alleges trade school perpetrated fraud by providing false information in discovery documents and in employee declarations supporting the summary judgment motion, and malice and oppression may be inferred from such fraudulent conduct.  To support this allegation, Campbell cites to his complaint, his opposition to the motion for summary judgment, a trade school financial advisor's declaration, a trade school manager's declaration, an email from the manager to Campbell advising Campbell that he had missed two consecutive days of school, his responses to trade school's special interrogatories, and the trial court's tentative ruling. The allegations in Campbell's complaint and opposition do not constitute evidence.  (See *Cassady v. Morgan, Lewis & Bockius LLP* (2006) 145 Cal.App.4th 220, 241 ["a party cannot rely on its own pleadings as evidence to support or oppose a summary judgment motion"].)  The tentative ruling made no mention of fraud.  And nothing in the declarations or Campbell's discovery responses shows trade school employees intentionally made false claims to induce reliance.  Campbell also claims trade school

6

engaged in other fraudulent activities such as altering his grades, sending his information to collection agencies before his graduation, and falsely claiming it did not receive an affidavit from Campbell. We disregard these claims because they lack appropriate citations to the record. (*County of Sacramento v. Singh, supra*, 65 Cal.App.5th at p. 861.) For these reasons, Campbell's fraud claim fails.

Because Campbell's fraud claim fails, we therefore do not need to address Campbell's contention that the trial court erred in relying on fraudulent and false information in granting the summary judgment motion.

Campbell's malice and oppression claims also fail because they are premised on his fraud claim.

C.      *Remaining Causes of Action*

Campbell forfeits his challenge to the grant of summary adjudication as to his negligent infliction of emotional distress claim by failing to address it in his opening brief. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177 ["failure to address summary adjudication of a claim on appeal constitutes abandonment of that claim"].)

Campbell contends trade school treated him differently than other students because it allowed other students to pay their tuition one month before the program ended but required him to make monthly payments. He contends this selective treatment gives rise to a cause of action under title 42 United States Code section 2000d. This section prohibits discrimination on the ground of race, color, or national origin in all programs receiving federal financial assistance. (42 U.S.C. § 2000d; *C&C Construction, Inc. v. Sacramento Municipal Utility Dist.* (2004) 122 Cal.App.4th 284, 304.) "To state a claim for damages under 42 U.S.C. § 2000d, *et seq.*, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." (*Fobbs v. Holy Cross Health System Corp.* (9th Cir. 1994) 29 F.3d 1439, 1447, overruled on another ground in *Daviton v. Columbia/HCA*

*Healthcare Corp.* (9th Cir. 2001) 241 F.3d 1131, 1133.) Campbell does not allege trade school's selective treatment was based on his race, color, or national origin. He thus fails to state a claim under title 42 United States Code section 2000d.

II

*Request for a Continuance*

Campbell contends the trial court erred in denying his request for a continuance of the motion for summary judgment on the ground that trade school twice failed to respond to his discovery requests. We disagree.

A plaintiff has two options to seek a continuance of a summary judgment motion: (1) comply with Code of Civil Procedure, section 437c, subdivision (h); or (2) make a showing of good cause. (*Hamilton v. Orange County Sheriff's Dept.* (2017) 8 Cal.App.5th 759, 764-765.) Campbell failed to do either.

First, any request for a continuance under Code of Civil Procedure, section 437c, subdivision (h) "must be submitted on or before the opposition is due." (*Levingston v. Kaiser Foundation Health Plan, Inc.* (2018) 26 Cal.App.5th 309, 315.) Here, the opposition was due 14 days before the hearing. (Former Code Civ. Proc., § 437c, subd. (b)(2).) Campbell's request for continuance was filed one day before the motion for summary judgment hearing. The trial court may properly disregard such an untimely request. (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 259.)

Second, "[r]eviewing courts must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823.) "In many cases involving the . . . abuse of discretion standard of review, . . . a reporter's transcript or an agreed or settled statement of the proceedings will be indispens[a]ble." (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483.) The party challenging a discretionary ruling has "an affirmative obligation to provide an adequate record so that we could assess whether the court abused its discretion." (*Wagner v. Wagner* (2008) 162 Cal.App.4th

8

249, 259.)  "The absence of a record concerning what actually occurred at the hearing precludes a determination that the court abused its discretion." (*Ibid.*)  "In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court." (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.)

Here, Campbell provides no reporter's transcript or settled statement.  Without a complete record, we do not know whether the trial court considered any good cause for the continuance or for Campbell's delay in filing the request.  So we must presume the trial court acted within its discretion in denying the request.

Campbell further contends "[t]he trial court erred [in] grant[ing] defendant's summary judgment motion, even though the trial court knew that defendant[] fail[ed] or refused to provide the requested information."  But to support this contention, Campbell cites only to his request for a continuance and provides no legal authority.  We deem this contention forfeited.  (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894-895.)

III

*Leave to Amend*

Campbell contends the trial court erred in denying his request for leave to amend the complaint to add new causes of action and to correct the name of a trade school employee.  We disagree.

"A trial court has wide discretion to allow the amendment of pleadings, and generally courts will liberally allow amendments at any stage of the proceeding." (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.)  On a motion for summary judgment, where the facts indicate a plaintiff has a good cause of action that is imperfectly pled, the trial court should allow the plaintiff to amend. (*Ibid.*)  But "when a plaintiff seeks leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the

9

amendment is based, '[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a "moving target" unbounded by the pleadings.' " (*Ibid.*) And leave to amend should not be granted where the amendment would be futile. (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1000.) "We review the denial of a motion for leave to amend for abuse of discretion." (*Ibid.*)

Here, Campbell seeks leave to amend to correct a trade school employee's name and to allege additional causes of action, including gross negligence and intentional infliction of emotional distress premised on trade school's alleged malicious and fraudulent actions against him. He cannot do so. As discussed above, the alleged malicious and fraudulent actions largely involve trade school employees' statements in their declarations made in support of the summary judgment motion. Because these statements were made in a judicial proceeding, they are protected by the litigation privilege that "bars all tort causes of action except a claim for malicious prosecution." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360, citing Civil Code section 47, subdivision (b).) An amendment based on these protected statements would be futile. And Campbell was aware of other alleged fraudulent actions by trade school such as altering his grades or sending his information to collection agencies long before he filed the opposition, but he did not seek amendment of the complaint until after trade school filed the summary judgment motion. Allowing Campbell to now amend the complaint and present a moving target unbounded by the pleadings would be unfair to trade school. (*Falcon v. Long Beach Genetics, Inc., supra*, 224 Cal.App.4th at p. 1280.) And correcting an employee's name would not cure the defects in any causes of action. The trial court acted within its discretion to deny Campbell's request for leave to amend his complaint.

DISPOSITION

The judgment is affirmed.  Trade school shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
MESIWALA, J.

We concur:

/s/
RENNER, Acting P. J.

/s/
FEINBERG, J.